**Michael ADAMS, Plaintiff,**

v.

**PROVIDENCE & WORCESTER COMPANY, Defendant.**

**No. CA 80–2537–T.**

United States District Court, D. Massachusetts.

May 27, 1983.

George J. Cahill, Jr., New Haven, Conn., for plaintiff.

Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

This is a personal injury case, in which the plaintiff's finger was crushed between two railroad cars owned by the defendant. After a jury verdict in favor of the plaintiff, defendant moved under Fed.R.Civ.P. Rule 59 for a new trial, and for relief from judgment pursuant to Rule 60(b)(6).

### I. *Background.*

The plaintiff, Michael Adams, is a former employee of the defendant railroad. On August 16, 1977, Adams was working as a trainman, and was attempting to get two railroad cars to couple automatically. When he was unable to get the cars to couple by themselves, he went between the

cars to attempt to set the couplers by hand. While Adams' hand was on the coupler of one of the cars, the other car rolled into the coupler and crushed part of his finger. The top half of his finger was subsequently amputated. Adams was out of work, except for one day, from the date of the injury until November 2, 1977. During this time, he received his full wages. Adams then returned to his job, and after a short period of time resumed his full duties.

On August 15, 1980, Adams filed this suit, under the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.,* the Safety Appliance Acts (SAA), 45 U.S.C. § 2, and the common law. The day after the complaint was served, the railroad removed Adams from service, on the ground that he was medically unfit for continued work. Adams was never returned to service, and was subsequently terminated for alleged picket line misconduct. Notwithstanding this subsequent termination for non-medical reasons, the railroad has never lifted the medical disqualification under which Adams was originally removed from service.

After trial, a jury found the railroad liable under the FELA, the SAA and common law negligence. The jury awarded $625,000 in damages. It also found that Adams was 20% contributorily negligent. Under the FELA, however, when a violation of the SAA is shown, no diminution of damages on account of contributory negligence is allowed. 45 U.S.C. § 53. On December 17, 1982 judgment was entered for Adams in the amount of $625,000 plus $157,277.40 in prejudgment interest.[1]

## II. *Motion for New Trial.*

The railroad moves for a new trial on the grounds that (1) certain evidentiary rulings were erroneous and prejudicial, (2) the jury verdict was excessive, and (3) the evidence showed that Adams' accident was caused by his own negligence.

### A. *Evidentiary Rulings.*

■ The railroad contends that it was prejudiced by the erroneous admission of two letters offered by Adams, and the exclusion of a letter offered by the railroad. The first contested letter was from Orville Harrold, then general manager of the railroad, to Adams, dated August 28, 1980, removing Adams from service. The railroad sought to exclude this letter on relevance grounds, arguing that it bore only on the question of wrongful termination. The letter states, however, that the railroad was removing Adams on the basis of his physical and mental condition caused by his on-the-job injury. It is thus a clear statement of the position that the railroad was taking as to the effects of Adams' injury.

The railroad argues that the letter is not competent evidence of Adams' physical condition, in that Mr. Harrold made no independent investigation of Adams' condition. This argument misses the legal import of opposing party admissions. An admission in a party's pleadings is taken as established regardless of whether it has any factual basis. Similarly, a party-opponent admission is not considered hearsay, regardless of whether the statement exhibits any indicia of reliability. See Fed.R.Ev.Rule 801. Mr. Harrold testified at trial that the railroad still had not lifted the medical disqualification it had placed on Adams in the August 28, 1980 letter. Under those circumstances, that letter was clearly relevant and admissible.

■ The second letter was from Adams to Mr. Harrold, dated October 22, 1982. Mr. Harrold had been asked, in deposition and at trial, what Adams would have to do to get his medical disqualification lifted. Mr. Harrold testified at trial that Adams would have to write a letter stating that he was fit and able to perform his duties. Adams then introduced the October 22 let-

---

1. The jury awarded only the $625,000 in damages. In entering judgment, the court added prejudgment interest to this award. Defendant has moved to strike the award of prejudgment interest, and this motion is discussed in Section III, *infra.*

ter, in which Adams stated, "I . . . presently am fit and capable of performing my duties as I was on the day you removed me from service." This letter, like the earlier letter, directly addressed the issue of Adams' physical condition, and the railroad's position on this issue. Mr. Harrold stated at trial that, despite the October 22 letter, the railroad had not lifted its medical disqualification. The testimony, in conjunction with the letter, served to clarify the parties' positions on a central issue in the case, namely the effect of Adams' injury on his physical condition. The October 22 letter, then, was directly relevant.

■ At the time Adams' letter of October 22 was introduced, the railroad attempted to introduce a letter which terminated Adams for picket line misconduct. This letter was excluded because it had no relevance to Adams' physical condition. In contrast to his removal from service, Adams' termination was not for medical reasons.

The railroad contends that, by virtue of these evidentiary rulings, the jury was left with the mistaken impression that Adams' medical condition prevented him from returning to work with the railroad. The short answer to that argument is that the letters which were admitted, together with the testimony of Mr. Harrold and Adams, established that (1) Adams was injured while on the job, (2) the defendant removed Adams from service on the grounds that he was medically disqualified to perform his duties, (3) Adams sought reinstatement but the defendant refused to lift the medical disqualification and continued that refusal at trial. Only evidence as to Adams' medical disqualification was admitted into evidence. The objected to letters were relevant to that issue. The excluded letter related to Adams' picket line activity. It was irrelevant and, therefore, was excluded. These rulings were proper and do not justify a new trial.

**B.** *The Size Of The Jury Award.*

The First Circuit has recently reiterated that a jury's award in a tort case should not be set aside unless it is "grossly excessive" or "shocking to the conscience." *Kolb v. Goldring, Inc.,* 694 F.2d 869, 871 (1st Cir. 1982). In describing the particular deference due to jury awards in tort cases, *Kolb* pointed out that damages in such cases "are given to compensate for losses not susceptible of arithmetical calculation, such as pain and grief." *Id.*

■ The jury had before it evidence as to damages for (1) lost back wages from the time Adams was removed from service for medical reasons in August 1980 to the time of trial, (2) impaired earning capacity, and (3) pain and suffering.[2] The railroad argues that Adams is not entitled to compensation for lost wages or impaired earning capacity because he testified that he considers himself fit and capable of performing his duties with the railroad. Moreover, continues the railroad, "[t]here was no medical testimony presented that Adams has been or will hereafter be medically disqualified from any occupation on account of his injury." Defendant's Memorandum of March 21, 1983, at p. 8. The railroad's assertions ignore the fact that its own President, Orville Harrold, testified that Adams has been and continues to be medically disqualified from employment with the railroad. The jury was certainly entitled to credit that critical testimony and use it in determining its damage award.

The respective positions of the parties are admittedly a bit bizarre—the plaintiff claiming he is fit, and the defendant asserting that he is not. Nonetheless, there was evidence by which a jury could find that Adams had been medically disqualified from his occupation as a result of his accident. If the railroad chooses to impose a continuing medical disqualification on the plaintiff, it should not be surprised that a

---

**2.** The parties do not dispute that Adams was paid full wages for time lost from the date of his injury until his return in November 1977.

In addition, the railroad paid his medical expenses for treatment of his injury during this time.

jury accepts that determination of continuing disability. Clearly, the jury's decision to do so was a finding of fact supported by competent and relevant evidence.

Adams testified that when he was removed from service in August 1980, he was earning an annual salary of approximately $32,000 a year. Assuming no increases in pay, Adams would have earned about $72,000 from August 1980 to the time of trial, had he not been removed. During this period, Adams stated that he attempted to find jobs, but was only able to earn a total of $4,200. Thus, the jury could have reasonably found lost back wages of $67,800.

As for impaired future earning capacity, Adams testified that he had gone to work for the railroad directly from high school, and had no other training or education. At the time he was injured he was only twenty years old. If Adams is medically disqualified from his occupation as a trainman, the jury could reasonably conclude that the impairment to his earning capacity over the course of his lifetime would be very substantial. Adams stated that he had sought employment from many employers, and had only earned $4,200 from August 1980 to December 1982. He was able to find part time work from a construction company at the rate of $5.00 an hour. The differential between this rate of pay, and Adams' salary as a trainman is over $20,000 a year. Given his age, the jury would have been warranted in finding that he had a work expectancy of at least thirty years.

Finally, Adams testified as to the pain and suffering he experienced through the accident causing his injury and the subsequent operations on his finger. He also gave evidence regarding the continuing embarrassment resulting from his permanent disfigurement. The jury, of course, was entitled to give Adams an award to compensate him for this pain and suffering.

The jury award in this case may have been generous, but it was not shockingly so. Given the deference to which the jury's decision is entitled, the court finds that the size of the award in this case does not warrant a new trial.

### C.  *Evidence Of Adams' Negligence.*

The railroad claims that there was no evidence that anything other than Adams' own negligence caused his injury. It is undisputed that there was evidence of Adams' negligence. Indeed, the jury found him 20% contributorily negligent. There was also testimony, however, on which the jury could reasonably assess liability against the railroad. Adams testified that the couplers on the railroad cars would not couple automatically. The SAA, 45 U.S.C. § 2, specifically requires railroads to equip their cars "with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The jury reasonably determined that the railroad had violated the SAA. Moreover, there is no question that had the couplers coupled automatically, Adams' injury would not have occurred. Once such a violation and causation is shown, the question of contributory negligence is irrelevant. 45 U.S.C. § 53.

The railroad contends that Adams acknowledged that the couplers were not defective. This contention is incorrect. Adams simply said that standard practice is that a coupler is not *reported* defective until all avenues of coupling, including hand coupling, are attempted. *See* Transcript, p. 90. If this is, in fact, the railroad's practice, then it cuts against the railroad not against Adams. The language of the SAA makes clear the statute's intent to avoid the necessity of having men go between the cars to couple and uncouple them.

■ There was also evidence from which the jury could have concluded that an employee of the railroad, brakeman Talbot, had not properly secured free standing cars with chocks and handbrakes, and that this caused Adams' injury. *See* Transcript, pp. 19–20, 89. From this the jury could conclude that the railroad had been negligent, and had failed to provide Adams with a safe workplace.

III. *Motion For Relief From Judgment.*

The railroad objects to the inclusion of prejudgment interest in the award to Adams, on the grounds (1) that prejudgment interest is not authorized in FELA or federal tort cases, and (2) that the question of prejudgment interest was not presented to the jury. Adams does not respond to these substantive contentions, but argues that the railroad's motion to strike prejudgment interest is untimely. Adams states that the motion to strike prejudgment interest is, in essence, a motion to amend or alter the judgment as authorized by Rule 59 of the Fed.R.Civ.P.

Under Rule 59(e), a motion to alter or amend must be brought within ten days of the entry of judgment. Judgment was entered in this case on December 17, 1982. While the railroad brought a Rule 59 motion for a new trial within ten days, it did not seek to delete prejudgment interest until February 25, 1983. Recognizing that it could no longer bring a Rule 59(e) motion, the railroad characterized its motion to strike prejudgment interest as a motion under Rule 60(b)(6).

Rule 60(b)(6) provides that the court may relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." A motion under this Rule need only be brought "within a reasonable time." The defendant argues that it was an error of law to add prejudgment interest to the jury's verdict, and that this error justifies relief from the operation of the judgment, under Rule 60(b)(6). The First Circuit, however, has taken a narrower reading of the power of the court to use Rule 60(b)(6) to strike an award of prejudgment interest. In *Scola v. Boat Frances, R., Inc.,* 618 F.2d 147 (1st Cir.1980), the court ruled that a motion to strike an award of prejudgment interest in a Jones Act case should properly be brought under Rule 59(e), within ten days of the entry of judgment. The court stated:

> The ten day time limitation fixed by Rule 59(e) is one of the few limitary periods

which the court has no power to enlarge, Rule 6(b), and the use of Rule 60(b) as an escape from it introduces an unacceptable contradiction to an important principle underlying the finality of judgments. The somewhat contrary view of Rule 60(b)(1) expressed in 7 J. Moore Federal Practice § 60.22[3] (2d ed. 1979) continues to be an unsatisfactory analysis of this part of the rule. It fails to give effect to the circumstance that "Rule 59 in particular is based on an 'interest in speedy disposition and finality.'"

*Id.* at 154 (citations omitted). On the basis of this view of the interaction between Rules 59(e) and 60(b), the court reversed the district court's order striking the award of prejudgment interest under Rule 60(b)(6).

While the defendant's delay in filing a Rule 60(b) motion in *Scola* was greater than defendant's delay in the present case, the principles of *Scola* are applicable here. The alleged error of law in awarding prejudgment interest was obvious on the face of the judgment, and there is no apparent reason why the defendant could not have challenged it in a Rule 59(e) motion. As in *Scola,* the defendant here should not be allowed to circumvent the requirements of Rule 59(e) by filing a motion under Rule 60(b). The defendant's motion to strike the award of prejudgment interest, therefore, is denied.[3]

An order will issue.

---

**3.** Because of the court's resolution of this issue, the question of whether the award of prejudg-

ment interest was an error of law need not be decided.