**Michael ADAMS, Plaintiff, Appellee,**

**v.**

**PROVIDENCE AND WORCESTER COMPANY, Defendant, Appellant.**

**No. 83–1398.**

United States Court of Appeals, First Circuit.

Argued Oct. 7, 1983.

Decided Nov. 23, 1983.

William J. LeDoux, Worcester, Mass., with whom James E. Wallace, Jr., P.C., John A. Mavricos, and Bowditch & Dewey, Worcester, Mass., were on brief, for defendant, appellant.

George J. Cahill, Jr., New Haven, Conn., with whom Cahill & Goetsch, P.C., New

Haven, Conn., was on brief, for plaintiff, appellee.

Before BOWNES and BREYER, Circuit Judges, and SMITH,* Senior District Judge.

PER CURIAM.

Defendant appeals from a judgment which followed a $625,000 jury verdict for plaintiff in this case arising under the Federal Employers' Liability Act (FELA) (45 U.S.C. §§ 51–60) and the Safety Appliance Act (45 U.S.C. §§ 1–43).

Plaintiff, a trainman who on alternate days performed the duties of an engineer, conductor, and brakeman, was injured on August 16, 1977, when the little finger of his right hand was crushed in a coupling operation.[1]

After two operations, the plaintiff was left with about half of a little finger. Plaintiff returned to work on November 2, 1977, and worked with full pay until August 29, 1980, at which time he was removed from train service.

On plaintiff's direct examination, he testified that he worked as an engineer during the period November 2, 1977, to mid-December 1977. From then until termination he worked full duty "without problems" as an engineer, conductor, and brakeman. Following his termination, he was variously employed in jobs requiring the use of his hands, and at the trial he testified that he was medically fit to work in his occupation as a trainman. This was all confirmed on cross-examination.[2]

Counsel for plaintiff argued to the jury that "Michael wants to return and he is in [sic] the opinion he can do the work."

There was no medical evidence offered as to the future, and there was no evidence as to the manner in which the loss of about half of his little finger would affect plaintiff's capacity to work.

Plaintiff does not argue that he is disabled; rather he argues that there is evidence from which a jury might have found that he was disabled. That argument is founded on a letter (received as Exhibit 1) written by Orville Harrold, the general manager of the defendant corporation, which stated:

Dear Mr. Adams:

It has come to my attention today, through your attorney, that because of an injury suffered by you on August 16, 1977 that, "As a result plaintiff was made sick, sore and lame and has suffered great pain of body, anguish of mind, and will so continue to suffer for an indeterminate period of time in the future; that prior to said accident the plaintiff was a strong able-bodied man capable of earning and actually earning the wages of a Trainman as an employee of the defendant Corporation; that as a result of said accident, the plaintiff had been incapacitated and prevented from engaging in his employment and that the plaintiff will

---

* Of the District of Montana, sitting by designation.

1. We do not here consider the sufficiency of the evidence to sustain the jury's findings on the liability issues since the defendant made no motion for a directed verdict. See Valm v. Hercules Fish Products, Inc., 701 F.2d 235 (1st Cir.1983); Sears v. Pauly, 261 F.2d 304, 307 (1st Cir.1958).

2. On cross-examination plaintiff testified as follows:

Q  Mr. Adams, after you returned to work on November 2nd, 1977, is it fair to say that up to the filing of the lawsuit here you did not receive any further medical attention on account of your injury?
A  I believe that's true, yes.

Q  I believe your earlier testimony was that as of, at least, 1978, the beginning of '78, you considered yourself fully able to carry out your old job?
A  Yes.
Q  And, in fact, did so up until at least August of '80?
A  Yes, I did.
Q  And you still consider yourself able to do so?
A  Yes.
Q  And there was no period of time in 1980 when you considered that you were unable to do so?
A  No.

continue to be so incapacitated in the future;"[3]

In view of the above representation of your physical and mental condition, that you have made through your attorney, and the fact that your physical and mental condition is responsible for the safety of private citizens and fellow-employees, I find it necessary to remove you from train-service immediately.

Plaintiff claims that this letter was an admission by defendant that plaintiff was disabled. This, however, is not what it shows. Plaintiff, by his statements, was able to work and was working until the defendant received a copy of the complaint. The fact is, and the letter accurately reveals the fact, that the plaintiff was discharged because of the allegations in the complaint. The letter clearly says that, in view of the representations, plaintiff's removal from train service was necessary. It does not say that the act of termination resulted from plaintiff's disability. A railroad employee who represents to the railroad that he is incapacitated makes the railroad extraordinarily vulnerable in actions involving that employee brought by fellow employees or third persons against the railroad. The management of a railroad might very well believe that the statement of incapacity was in itself a sufficient reason for discharge. Whether that is true as a matter of law is another question.[4] In any event, the letter cannot be read to state more than that the employer did not want a man who represented himself to be incapacitated on its payroll. Hence we conclude that the relevance of the letter to the issues in the case was highly limited. Indeed, we have doubts as to its admissibility under Fed.R. Evid. 402 ("Evidence which is not relevant is not admissible."), as supplemented by Fed.R.Evid. 401 ("Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence.").

Regardless, Fed.R.Evid. 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the confusion and prejudice it might engender. And, although appellate courts do not often second-guess trial courts in balancing relevance against prejudice, see, e.g., United States v. Boykin, 679 F.2d 1240, 1244 (8th Cir.1982); United States v. Barletta, 652 F.2d 218, 220 (1st Cir.1981), in this case we are willing to do so. See Ballou v. Henri Studios, Inc., 656 F.2d 1147, 1154 (5th Cir.1981); see also 22 C. Wright & K. Graham, Federal Practice and Procedure § 5223, at 317 (1978).

Were we playing games, perhaps a plaintiff could claim some kind of a one-upmanship if he made a false statement and the defendant affirmed it. But we believe the law is designed to discover the truth, and the demonstrable truth in this case is that plaintiff was not incapacitated between November 2, 1977, the date that he returned to work, and August 29, 1980, the date that he was discharged. He worked and was paid in full for that period. Neither was he incapacitated between August 29, 1980, and the date of trial. There was no medical change in his condition after August 29, 1980, and in the absence of some change, he could do the work he had previously done. He claimed throughout the trial that he had not been disabled and that he was not then disabled. In terms of whether plaintiff had any future loss of earnings, the letter had no probative value.

The admission of Exhibit 1 clearly caused confusion and resulted in prejudice. Plaintiff did not argue that his physical capacity to earn had been injured; rather he argued that he was able to work but had been "medically discharged." The jury verdict in the amount of $625,000 must be attributed

3. With very minor deviations, the quoted language is taken accurately from the complaint.

4. We here deal with the damages flowing from an injury compensable under FELA. This is not an action for wrongful discharge. Some other tribunal will decide whether plaintiff's discharge, brought about by the false statements in the complaint, was wrongful.

in a large measure to loss of future earnings based on the medical discharge.

The judgment must be reversed because of the admission of Exhibit 1.

When this trial was concluded, plaintiff, as a matter of law, had no claim for loss of earnings before the date of his dismissal because he had been paid in full. He had no claim for medical bills because they had been paid in full. He did have a claim for loss of earnings after August 29, 1980, only if he proved some diminution of earning capacity after the date of termination. There was no such proof. Unresolved is plaintiff's claim for damages for physical pain and mental anguish.

In view of what the plaintiff both contended and proved at the trial, he is not entitled to damages for loss of future earnings because his future earning power was not impaired. The judgment of the trial court, 564 F.Supp. 1373, is

*Reversed.* The case is remanded for trial on the issue of only those damages arising out of plaintiff's physical pain and mental anguish.