**Theodore KOLB, Plaintiff, Appellee,**

v.

**GOLDRING, INC., Defendant, Appellant.**

**Theodore KOLB, Plaintiff, Appellant,**

v.

**GOLDRING, INC., Defendant, Appellee.**

**Nos. 82–1408, 82–1466.**

United States Court of Appeals,
First Circuit.

Argued Oct. 7, 1982.
Decided Dec. 2, 1982.

Michael I. Bernstein, New York City, with whom Neal I. Korval, Mark H. Leeds, Mindy Novick and Benetar Isaacs Bernstein & Schair, New York City, were on brief, for Goldring, Inc.

R. Daniel Prentiss, Providence, R.I., with whom Decof & Grimm, Providence, R.I., was on brief, for Theodore Kolb.

Before PECK,* Senior Circuit Judge, CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On March 17, 1978, Theodore Kolb, then 63, was fired by his employer of two and one-half years, Goldring, Inc. Kolb brought this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, alleging that he had been terminated on account of his age. A jury awarded him $45,000 in compensatory damages; $45,000 in liquidated damages was added on a finding of willfulness on the part of Goldring. Kolb then requested but was denied an award of prejudgment interest. The district court denied Goldring's motions for a new trial, judgment notwithstanding the verdict, and remittitur. Both parties appeal. Defendant contends the damages award was grossly excessive and should have been remitted by the district court.[1] Plaintiff contends that the district court should have allowed his request for prejudgment interest.

Turning first to the issue of excessive damages, the evidence before the jury indicated that at Goldring, Kolb had enjoyed a salary of $22,000 a year, an annual allowance of $5,000 for "expenses," personal use of a company car, and a 40 percent discount on clothing purchased from his employer. Following his discharge, he briefly collected unemployment insurance and worked for an executive search firm before finding, two months after leaving Goldring, the position which he continued to hold up to the time of trial. His starting salary at the new job had been identical to that received at Goldring, $22,000 per year. However, within three years he was making $34,500 and participating in a bonus plan. It is unclear from the record how much, if any, income Kolb received under the bonus plan. The parties do agree, however, that apart from any bonuses Kolb had an income of $101,350 for the 46¼ months between his termination by Goldring and the date of judgment.

Generousness of a jury's award does not alone justify an appellate court in setting it aside. In tort cases, where the damages are given to compensate for losses not susceptible of arithmetical calculation, such as pain and grief, we have declined to second-guess a jury unless its verdict is "grossly excessive" or "shocking to the conscience." E.g., LaForest v. Autoridad de Las Fuentes Fluviales, 536 F.2d 443, 447 (1st Cir.1976); see Bonn v. Puerto Rican International Airlines, 518 F.2d 89, 94 (1st Cir.1975). In contract or other cases involving only economic loss, the standard of review is somewhat different, although still deferential to the jury. In cases of that type, in the words of Judge Wisdom, a verdict is excessive as a matter of law if shown to exceed "any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." Glazer v. Glazer, 374 F.2d 390, 413 (5th Cir.), cert. denied, 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967).

Jury trials of age discrimination claims fall under the contract rubric. The action is for "amounts owing." 29 U.S.C. § 626(c)(2). Indeed, the Third Circuit has stated, with regard to the availability of

---

* Of the Sixth Circuit, sitting by designation.

1. Defendant does not contest on appeal the finding of liability.

jury trial, that in its "essential nature" an ADEA action is identical to a common law suit for back wages for breach of contract. *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 838 (3d Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Unlike the tort plaintiff, the plaintiff suing under the ADEA may recover only "those pecuniary benefits connected to the job relation." Note, *Set-Offs Against Back Pay Awards Under the Federal Age Discrimination in Employment Act*, 79 Mich.L.Rev. 1113, 1117 (1981). Pain and suffering form no part of the damages. *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir.1978). Punitive damages are not allowed. *Walker v. Pettit Construction Co.*, 605 F.2d 128, 130 (4th Cir.1979). *See Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684, 686–88 (7th Cir.), *petition for cert. filed*, 51 U.S.L.W. 3305 (Oct. 5, 1982). Damages are meant to put the plaintiff in the economic position he would have occupied but for the discrimination. *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir.1979); Note, *supra*, 79 Mich.L.Rev. 1113. *See generally* Annot., 52 A.L.R.Fed. 837 (1981). Thus cases like this one call for a simple tabulation of "items of pecuniary or economic loss such as wages, fringe, and other job-related benefits." H.R.Rep. No. 950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Ad. News 504, 528, 535. From these must be subtracted post-termination economic benefits. While in calculating damages the jury is free to select the highest figures for which there is adequate evidentiary support, it may go no higher. Courts cannot "permit damages speculation where the for-

mula for calculation is articulable and definable. Flexibility beyond the range of the evidence will not be tolerated." *Jamison Co. v. Westvaco Corp.*, 526 F.2d 922, 936 (5th Cir.1976).

■ The jury in this case found compensatory damages in the sum of $45,000.[2] The question is thus whether, reading the record most favorably to the jury's verdict, this amount "exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before" it.

Plaintiff-appellee argues that the following yearly values and 46¼ month (the period from termination to judgment) totals were permissible inferences from the evidence, and that they more than support the $45,000 verdict.

| | | |
|---|---|---|
| 1. | Salary — $22,000/year, | $85,000 |
| 2. | Prospective Raises — $8,000/year, | $31,000 |
| 3. | Expense Account — $5,000/year, | $19,000 |
| 4. | Use of company car — $2–3,000/year, | $10,000 |
| 5. | Clothing discount — $1,600/year, | $6,000 |
| | Grand Totals | $39,000/year, $151,000 |

These figures, if accepted, justify an award of $50,000, i.e., $151,000 less $101,000, the amount Kolb earned after leaving Goldring. However, we are satisfied only that the salary (1) and the clothing discount (5) figures are sufficiently supported in the record to have been included in full by the jury. We now turn to items (2) through (4).

*Prospective Raises.* Recovery for raises an employee might reasonably have anticipated had he not been wrongfully dis-

---

**2.** The jury also awarded the matching sum of $45,000 in liquidated damages. Liquidated damages in an amount equal to compensatory damages are statutorily authorized to "compensate the aggrieved party for nonpecuniary losses arising out of a willful violation of the ADEA." H.R.Rep. No. 950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. & Ad.News 528, 535. *See* 29 U.S.C. §§ 216(b), 626(b). The House Report explains that liquidated damages "provide full compensatory relief for losses that are 'too obscure and difficult of proof to estimate other than by liquidated damages.' " H.R.Rep. No. 950, *quoting Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86

L.Ed. 1682 (1942) (discussing same provision in context of FLSA).

Appellant does not here challenge the jury's authority, on this record, to have made the requisite finding of willfulness and to have awarded liquidated damages. Of course, to the extent this court finds the compensatory award was too high, the liquidated damages award must be correspondingly reduced to match the correct compensatory damages sum. *Cf. Rodriguez v. Taylor*, 569 F.2d 1231, 1236 n. 9 (3d Cir.1977) (remanding for recalculation of offsetting post-termination earnings with instructions to reduce the liquidated damages accordingly), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978).

charged has been allowed in ADEA cases. *See, e.g., Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149, 160–61 (7th Cir.1981); *Kelly v. American Standard, Inc.,* 640 F.2d 974, 985–86 (9th Cir.1981); *Combes v. Griffin Television, Inc.,* 421 F.Supp. 841, 844 (W.D.Okla.1976). However, where awarded, either under the ADEA or in other contexts, the projection has been based on expert testimony, patterns of past increases, or similar evidence. In addition to the three cases just cited, *see Grunenthal v. Long Island Rail Road,* 393 U.S. 156, 160, 89 S.Ct. 331, 333, 21 L.Ed.2d 309 (1968) (FELA case; Court notes "'convincing testimony not refuted ... demonstrating the steady wage increases in recent times for work equivalent to that rendered by the plaintiff, and the strong likelihood that similar increases would continue.'"); *Satty v. Nashville Gas Co.,* 522 F.2d 850, 855 (6th Cir. 1975), *modified,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977) (Title VII).

Here Kolb did not in fact receive any raise before he was let go. No evidence was introduced showing a company policy or practice from which it could be inferred that someone in his position would have received an $8,000 raise. Nor was other statistical or expert evidence introduced showing comparable salary increases in the industry. And while the jury had evidence that Kolb had unsuccessfully sought an $8,000 raise before being fired, this proved little, if anything.

On the other hand, there was evidence that Kolb's successor was paid $28,000[3] —$6,000 more than Kolb—and that Kolb's salary went up markedly in his new employment, suggesting that it would be unrealistic to believe that he would have remained at $22,000 in an inflation-ridden economy throughout the period in question. There was also evidence, which the jury could have credited, that Kolb had been largely responsible for putting the company back on its feet. Employees generally—and certainly effective employees—do often receive raises as they continue to work at the same job.

While the above factors might well have led a rational jury to believe that Kolb would have been granted raises during the period in question had he not been fired, we remain troubled by the lack of specific evidence from which the jury could have deduced the amount of such raises. The situation resembles that in contract cases involving claims for lost profits. There the evidence must establish the amount of lost profits with "reasonable certainty." 3 Restatement of Contracts 2d, § 352 & comment a (1981); 5 Corbin on Contracts § 1020 (1964). To be sure, this standard leaves the jury with fairly broad discretion. "Mere dispute on the validity of some of the figures cannot wipe out the evidence but merely emphasizes that the jury was presented with a factual question whose determination we should not change." *Lee v. Joseph E. Seagram & Sons, Inc.,* 552 F.2d 447, 456 (2d Cir.1977). *See also* 5 Corbin on Contracts § 1022 at 145–46 ("The trial court has a large amount of discretion in determining whether to submit the question of profits to the jury; and when it is so submitted, the jury will also have a large amount of discretion in determining the amount of its verdict."). This does not mean, however, that a jury is free to pull figures out of a hat. The plaintiff has the burden of placing evidence in the record affording reasonable support for the sums found. A "jury may not render a verdict based on speculation or guesswork." *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946). *See generally Nat Harrison Associates v. Gulf States Utilities Co.,* 491 F.2d 578, 587 (5th Cir.1974). With these standards in mind, we conclude that while some raise could reasonably have been provided, any amount above that implied by the $28,000 salary of Kolb's successor had to be purely speculative. Accordingly, this component of the damages calculations must be limited to $6,000/year.

*Use of Company Car.* We have similar reservations as to the legitimacy of

---

**3.** We note, however, that the duties of the two were not identical, and that Kolb's successor was already employed by Goldring when he took over Kolb's responsibilities.

including *any* value for the use of the company car. There was no evidence from which the jury could determine what that value might have been. Plaintiff introduced no evidence, for example, of the year or model of the car, or of what it would have cost to lease or maintain such a car or, for that matter, any car. The car was mentioned a few times at trial, and in his summation, plaintiff's counsel argued simply that Kolb "had a car which was business and he took it home for personal use as well." The dollar figures pertaining to the costs and savings of car use or leasing are not matters as to which a jury can legitimately take notice, based simply on its own experience, without evidence of any sort. The plaintiff bore the burden of indicating the extent of damages "as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946) (FLSA). Some sort of factually based estimate or statement of the economic value of the company-provided car was required and would not have been unfairly difficult to provide. In contrast to, for example, plaintiff's proof as to the value of the clothing discount, here no evidence at all was submitted to the jury. While "[i]t is sufficient if a reasonable basis of computation was afforded, although the result be only approximate," *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927), here there was no basis for computation whatever. We therefore hold that the jury could not, on this silent record, include in its calculations a value for the car. Any such value had to be nothing but guesswork.

■ *Expense Account.* The final doubtful item is the $5,000 expense account. Kolb testified that he received the $5,000 whether or not he actually used it, and the defendant's witness conceded that *how*

Kolb used it was largely up to him. He could, for example, entertain a friend if in his judgment cultivating that friend might have some general benefit to the company. Yet we do not believe that the jury could fairly treat an account of this nature—however casually administered—as fully equivalent to an additional $5,000 in salary. Kolb did not treat it as such; he did not report the account as income taxable to himself. This would indicate that whatever personal satisfaction and benefit he may have obtained from it, he still regarded it as of benefit to the company. In view of Kolb's tax treatment of the expense account and its label, we think that the jury was bound to assume that there were meaningful limits to Kolb's use of the money: it had to be put to some use of at least general benefit to his employer. It was not his to do with entirely as he pleased. On the other hand, we shall accept that the account was also of substantial personal benefit to Kolb. Thus, if $5,000 is, as we think, too high a value to place on the account, zero could well be too low. We hold that the jury could value the $5,000 account at 50 percent of its face value, or $2,500/year.

■ We conclude that the jury's determination of compensatory damages in the amount of $45,000 was excessive. Rather, based on the figures explained above, we think that the upper limit of a justifiable sum was $24,650. This amount is calculated as follows. Kolb's lost Goldring income totals $32,100 per year. This is more than he earned at his new job at any point until June 1, 1981, on which date he received a raise from $31,000 to $34,500. At that point, the damages from his termination were complete and settled. Thus, the relevant period for the calculation is from the date of termination, March 17, 1978, until June 1, 1981.[4] To continue the

4. Had Kolb's Goldring income been as high as he suggests (approximately $39,000 per year), Kolb would still have not regained his former economic status by the date of judgment. The proper period would then have been from the date of termination to the date of judgment. In such circumstances, of course, damages are

"settled" on the date of judgment and the plaintiff cannot then recover damages for future economic loss, or "front pay," even though the injury continues. *See Wehr v. Burroughs,* 619 F.2d 276, 283 (3d Cir.1980) (no future damages where the plaintiff did not seek reinstate-

period to the date of judgment would arbitrarily reduce the award. Kolb's income during this period was $78,350. At an annual rate of $32,100 he would have earned approximately $103,000 at Goldring. Compensatory damages are therefore $24,650. Doubling this amount in light of the employer's willfulness gives a total of $49,300, which we round off to $49,500.

Although the jury's award was excessive as a matter of law, a new trial may not be necessary. The defects in the award are readily identified and measured. Therefore, we feel remittitur would be more appropriate here. Adjustment of the award is fairly mechanical and does not interfere with the jury's function. *See Stapleton v. Kawasaki Heavy Industries, Inc.,* 608 F.2d 571 (5th Cir.1979); Note, *Remittitur Practice in the Federal Courts,* 76 Colum.L.Rev. 299, 305–06 (1976). The finding of liability was not appealed, and we have no reason to question it. Accordingly, if plaintiff refuses to remit, the new trial should be limited to the question of damages.

In these circumstances, it is appropriate for this court to do what the trial court declined to do. We order that a new trial be held on damages unless the plaintiff consents to a remittitur of $40,500. *See Matador Drilling Co. v. Post,* 662 F.2d 1190, 1198 (5th Cir.1981); *Stapleton v. Kawasaki Heavy Industries, Inc.,* 608 F.2d at 574 & n. 7; 11 Wright & Miller, *Federal Practice & Procedure: Civil* § 2820 (1973 & Supp. 1982).

Kolb's appeal from the denial of prejudgment interest is more quickly disposed of.[5] For the two reasons identified by the district court, prejudgment interest was properly denied. First, plaintiff did not request prejudgment interest from the jury. He was therefore barred from subsequently seeking it from the judge. *Robinson v. Watts Detective Agency,* 685 F.2d 729, 742 (1st Cir.1982); *Furtado v. Bishop,* 604 F.2d 80, 98 (1st Cir.1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980).[6] Second, almost every court that has considered the matter has concluded that an award of liquidated damages in an ADEA action bars prejudgment interest.[7] The most recent court of appeals case is *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1114 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981), which relies on FLSA cases propounding the same rule. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 715, 65 S.Ct. 895, 906, 89 L.Ed. 1296 (1945). We agree that an award of liquidated damages bars prejudgment interest in ADEA cases.

*So ordered. Costs are awarded to appellant in No. 82–1408, and to appellee in No. 82–1466.*

---

ment); *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 235 (N.D.Ga.1971).

5. We note in passing a peculiar tension created by a request for prejudgment interest in a case such as this. The amount of the award rises steadily until the plaintiff matches his former level of income, if he does so at all. Prejudgment interest is supposed to protect the value of an award against decrease in value from delay. Here, however, the delay increased the actual amount of the award and was therefore beneficial to the plaintiff. As recalculated, Kolb's annual Goldring income was more than he earned at any point at his new job except for the last six months before judgment. Thus, for all but six months Kolb was in large measure benefitted by the delay for which he now seeks to be "compensated."

6. Plaintiff argues that this waiver does not apply to situations where prejudgment interest is mandatory rather than discretionary. Even if

this were true, plaintiff has not convinced us that this is indeed such a situation. We are hesitant to impose an inflexible rule requiring—or barring—prejudgment interest. *See Furtado v. Bishop,* 604 F.2d at 97–98. *See also Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d at 162 (award of prejudgment interest in ADEA suits within the sound discretion of the trial court); *Kelly v. American Standard, Inc.,* 640 F.2d at 982 (prejudgment interest "allowable"; authorized by 29 U.S.C. § 626(b), which empowers a court to "grant such legal and equitable relief as may be appropriate.").

7. In *Kelly v. American Standard, Inc.,* the Ninth Circuit upheld an award of prejudgment interest and also remanded for a determination whether liquidated damages should be awarded. It is unclear whether the possible inconsistency was noticed.