**The CONJUGAL PARTNERSHIP COMPRISED BY JOSEPH JONES AND VERNETA G. JONES, D/B/A Stenotype Systems, Plaintiffs, Appellants,**

**v.**

**The CONJUGAL PARTNERSHIP COMPRISED OF ARTHUR PINEDA AND TONI PINEDA, Defendants, Appellees.**

**No. 93-1404.**

United States Court of Appeals,
First Circuit.

Heard March 10, 1994.

Decided May 4, 1994.

Olga M. Shepard, Hato Rey, PR, for appellants.

Maria H. Sandoval, Santurce, PR, for appellees.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is a breach of contract action arising out of a dispute between two court reporters in the United States District Court for the District of Puerto Rico. The appeal involves two jury trials. In the first trial, a jury found in favor of plaintiff, Joseph Jones, and awarded him $225,000 in damages. The district court granted a postjudgment motion by defendant, Arthur Pineda,[1] vacated the judgment, and ordered plaintiff to remit $140,000 or submit to a new trial on damages. Plaintiff refused to accept the remittitur, and proceeded to trial. This time around he was awarded $20,000. He appeals, challenging the district court's jurisdiction, its decision to vacate the original judgment and order a partial remittitur or a new trial on damages, and the court's admission of evidence, at both trials, on the issue of mitigation of damages. We affirm.

## I.

## *BACKGROUND*

The following facts are viewed in the light most favorable to the verdict winner, the plaintiff, and all reasonable inferences are drawn in his favor. *Lama v. Borras,* 16 F.3d 473, 477 (1st Cir.1994).[2] Plaintiff Jones came from New York State to Puerto Rico in March 1987 to work as the official court reporter for federal district judge Jose A. Fuste. The position was offered for a one-year term, and Jones left Judge Fuste's employ as scheduled in March 1988. Shortly thereafter, defendant Pineda, the official court reporter for federal district judge Ray-

1. More precisely, the plaintiffs-appellants in this case are the conjugal partnership comprising Joseph Jones and his wife Vernetta, who worked together as Stenograph Systems, Inc. The defendants-appellees are the conjugal partnership comprising Arthur Pineda and his wife Toni. Throughout this opinion, we refer to the parties in the singular, meaning the husband court reporter.

2. For a more thorough recitation of the facts of this case, we refer you to the district court's thorough opinion, *Conjugal Partnership Comprised by Jones v. Conjugal Partnership Comprised by Pineda,* 798 F.Supp. 892 (D.P.R.1992) (*"Conjugal I"*).

mond L. Acosta, offered Jones a lucrative opportunity. Judge Acosta was the presiding judge in the San Juan Dupont Hotel Fire Litigation, a complex multi-plaintiff case which promised a lengthy trial during which the attorneys would require daily transcripts.

Pineda realized that he and his wife, who was not a court reporter but aided her husband in producing the transcripts, would be unable to handle this task alone. After some preliminary discussions, Pineda and Jones reached an oral agreement whereby Pineda agreed to hire Jones "for the entire length of the *Dupont* trial," during which they would split all of the court reporting duties and fees. Jones agreed to remain in Puerto Rico until the trial ended, and further agreed to get a letter of reference from Judge Fuste. Subsequently, Pineda sought Judge Acosta's approval, which was reluctantly given, for hiring Jones. Apparently Jones had transcribed several pretrial conferences in the Dupont case, and Judge Acosta was not impressed with his reporting skills. Nonetheless, given Pineda's repeated assurances, Judge Acosta acquiesced to Jones' participation for "phase I" of the Dupont trial. But, Pineda never informed Jones that Judge Acosta's authorization was a condition precedent to the oral contract, or that revocation of the judge's approval would result in the contract's termination. And, Pineda never informed Judge Acosta that he had hired Jones for the duration of the trial.

The Dupont trial was scheduled to proceed in discrete "phases." Phase I began in March 1989 and lasted for thirty-three days. Jones and Pineda shared the workload and the fees generated by phase I. Phase II commenced on June 27, 1989, and lasted until December 1990. The trial ended in December 1991. Pineda terminated Jones on June 30, 1989, and told Jones that he made too many mistakes and was slowing things down. Earlier that day Pineda had voiced similar concerns about Jones to Judge Acosta who agreed that Jones should no longer work on the case and revoked his prior authorization. Pineda told Jones that he (Pineda), and not Judge Acosta was responsible for Jones' discharge. There was evidence that on June 29, the day before Jones was terminated, a new system was developed for linking the in-court stenograph machine to a computer located outside of the courtroom, enabling one reporter (Pineda) to handle the reporting work.

For his work on phase I of the trial, Jones received, $49,108.00, or approximately $1,500 for each of the thirty-three sessions. This represents half of the total fees paid for reporting services during phase I, $112,083, less expenses. The entire trial generated a total of $465,787.75 in court reporting fees.

The jury found that, under the parties' agreement, Pineda was obligated to pay Jones one-half of the compensation received for transcribing the trial, whether or not Judge Acosta continued to authorize Jones' presence in the courtroom. Consequently, it awarded Jones $225,000 in damages.

Pineda moved for judgment as a matter of law, or alternatively, for a new trial pursuant to Fed.R.Civ.P. 50 and 59. In a thoughtful opinion, the district court denied the motion for judgment as a matter of law:

> [T]he jury found reasonably that, in exchange for plaintiff's promise to stay, the defendant promised to employ plaintiff for the duration of the Dupont trial and to divide equally the compensation he received; and further found reasonably that defendant's obligation to pay was not conditioned on Judge Acosta's continuing approval of plaintiff's participation and, alternatively, that defendant knowingly assumed the risk that Judge Acosta would not approve of plaintiff's participation after phase I....

*Conjugal I,* 798 F.Supp. at 896. The court also declined to order a new trial on liability because "the verdict on liability, while by no means inevitable, was not against the clear weight of the evidence." *Id.* at 899. The court found, however, that damages were a "different story." *Id.* at 899. The court found that the jury's award was excessive, was based on a flawed analysis, and that a new trial limited to the issue of damages was necessary. *Id.* at 900–02. The court added that plaintiff could avoid a retrial on damages by agreeing to remit $140,000. *Id.* at 902–03. Plaintiff declined the offer and proceeded to trial. He was awarded $20,000 in damages. This appeal ensued.

## II.

## *DISCUSSION*

On appeal plaintiff argues primarily that: (1) the district court lacked subject matter jurisdiction; (2) the trial judge abused his discretion in vacating the original judgment and ordering a remittitur or alternatively, a new trial on damages; and (3) the trial judge erred in allowing defendant to present evidence, in both the first and second trials, concerning mitigation of damages because defendant had not pleaded mitigation as an affirmative defense.

### A. *Jurisdiction*

■ This action was removed from Puerto Rico Superior Court pursuant to 28 U.S.C. § 1442(a)(3). *See Conjugal Partnership Comprised by Jones v. Conjugal Partnership Comprised by Pineda,* 734 F.Supp. 41 (D.P.R.1990) (granting defendant's removal petition and denying plaintiff's motion to remand). That statute provides:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: ...
>
> (3) Any officer of the courts of the United States, for any Act under color of office or in the performance of his duties.

28 U.S.C. § 1442(a)(3).[3] Plaintiff contends that the case was improvidently removed from superior court and should be remanded. We disagree.

■ The statute guarantees an officer of the federal courts the right to remove an action commenced against him in state court when he can allege a "colorable" federal defense to that action. *Mesa v. California,* 489 U.S. 121, 136, 109 S.Ct. 959, 968, 103 L.Ed.2d 99 (1989); *American Policyholders Ins. Co. v. Nyacol Products,* 989 F.2d 1256, 1259 n. 3 (1st Cir.1993). Although the *Mesa* court was concerned principally with § 1442(a)(1), the general provision of the federal officer removal statute,[4] the Court noted that "subsections (2)–(4) of § 1442(a) are largely the 'residue' of the pre–1948, more limited removal statutes now entirely encompassed by the general removal provision of the first clause of subsection (1)." *Mesa,* 489 U.S. at 134, 109 S.Ct. at 967. The Court further noted that subsection (3) should be interpreted consistently with subsection (1). *Id.* at 135, 109 S.Ct. at 967–68. Consequently, the present case was properly removed if defendant asserted a federal right or raised a question of federal law in his defense. *Id.* at 126–27, 109 S.Ct. at 963–64 (citing *Tennessee v. Davis,* 100 U.S. 257, 262, 25 L.Ed. 648 (1880)).

In his Answer, defendant alleged that plaintiff "served at the pleasure of the [District] Court," was no longer acceptable to the court because of poor performance, and was properly dismissed by Judge Acosta. *Answer to Complaint* at ¶¶ A–C & E. Defendant's removal petition averred that the dispute arose "out of the laws and regulations of the United States ... which govern and set the relationship between the United States Courts and the court reporters [who] perform duties for said courts, including the power to dismiss or terminate the duties of said court reporters." *Notice of Removal* at ¶ 2. The removal petition also stated that,

> [i]n order to determine whether the defendants are or [are] not liable in this civil action ... any court ... must construe the terms [and] provisions of those Acts of Congress dealing with the United States Courts and those regulations issued by the Administrative Office of the United States dealing with court reporters and the supervisory powers of the courts over federal court reporters....

3. Although Puerto Rico is not a "State," Congress has expressly provided that actions commenced in the Superior Court of Puerto Rico are removable under the federal removal statutes. 48 U.S.C. § 864; *Camacho,* 868 F.2d at 486 n. 4.

4. Section 1442(a)(1) permits removal of an action to federal court by:

> Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

28 U.S.C. § 1442(a)(1).

*Id.* Finally, in opposition to plaintiff's motion to remand, defendant elaborated on the statutes and regulations adverted to in his removal petition. In particular, defendant argued that court reporting and court reporters in federal courts are regulated by 28 U.S.C. § 753 and the Court Reporter's Manual issued by the Administrative Office of the United States Courts (AO). *Opposition to Motion to Remand* at ¶ 4. Defendant further maintained that he was not personally liable to plaintiff, that Judge Acosta was authorized to discharge plaintiff under § 753 and the AO guidelines, and that the judge did so as a result of plaintiff's inadequate performance. *Id.* at ¶ 5.

We believe that these allegations were sufficient to satisfy the statutory requirements, and thus the case was properly removed. *Venezia v. Robinson,* 16 F.3d 209, 212 (7th Cir.1994) ("Once the federal defendant has a plausible federal defense, removal is appropriate so that the federal court may determine whether the defense succeeds. A federal defendant need not show that he is entitled to prevail in order to have access to the federal forum."). Plaintiff insists, however, that this is a state law breach of contract action that was properly filed in superior court and should have remained there. We disagree. By raising a colorable federal defense, a defendant-official converts an otherwise nonremovable state law action into one that falls within the federal court's jurisdiction. *See Mesa,* 489 U.S. at 136–37, 109 S.Ct. at 968–69. The federal officer removal statute does not require that the case be one that could have originally been filed in federal court. *Williams v. Brooks,* 945 F.2d 1322, 1325 (5th Cir.1991) (citing cases); *see Mesa,* 489 U.S. at 136, 109 S.Ct. at 968 ("The removal statute ... serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense is alleged."). Moreover, that this is a breach of contract case arising under Puerto Rico law is not alone a bar to removal. *See Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 487 (1st Cir.1989) (under the federal removal statute "the right to remove is not vitiated even if the case necessitates the construction and interpretation of state or local law").

Finally, although plaintiff has pointed to the ultimate failure of defendant's federal defense as a ground for remand, it is irrelevant for purposes of removal under § 1442(a) that Pineda did not prevail on his federal defense. *See* 28 U.S.C. § 1447(c); *see also Jamison v. Wiley,* 14 F.3d 222, 239 (4th Cir.1994) ("Nothing in the federal removal statutes authorizes the remand of a case that has been properly removed under § 1442(a)(1) on the ground that the federal employee's ... defense is later rejected.").

At oral argument plaintiff argued that our recent decision in *American Policyholders* precludes application of the federal removal statute in this case. Our reading of that case leads us to the opposite conclusion. In *American Policyholders* we held that a suit against a federal officer exclusively in his or her official capacity is a suit against the agency for purposes of removal under § 1442(a)(1). *American Policyholders,* 989 F.2d at 1260. And, because an agency may not remove a case under the statute, *id.* at 1259, "a federal officer sued solely in his or her official capacity may not remove a suit to federal court under the aegis of 28 U.S.C. § 1442(a)(1)." *Id.* at 1261. Because this action was brought against defendant solely in his individual and not his official capacity, it was subject to removal under § 1442(a)(3).

### B. *Remittitur or A New Trial on Damages*

Plaintiff argues that the district court erred in vacating the original judgment of $225,000 and ordering a remittitur of $140,000 or, alternatively, a new trial on damages. According to plaintiff, the district court was not entitled to substitute its judgment for that of the jury.

Under Federal Rule of Civil Procedure 59(a), "[a] new trial may be granted ... on all or part of the issues...." Fed.R.Civ.P. 59(a); *Allen v. Chance Mfg. Co.,* 873 F.2d 465, 474 (1st Cir.1989). On the issue of damages the court found that the "[d]amages awarded to plaintiff by the jury were so clearly excessive ... as to require a new trial on damages, unless a remittitur would be appropriate and acceptable to plaintiff...."

*Conjugal I,* 798 F.Supp. at 900. We have recognized that a district court's discretion to grant a new trial extends to cases in which the court determines that the damages awarded by the jury are excessive. *See Perez–Perez v. Popular Leasing Rental, Inc.,* 993 F.2d 281, 283 (1st Cir.1993) ("'The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim ... that the damages are excessive.'" (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940))); *McIsaac v. Didriksen Fishing Corp.,* 809 F.2d 129, 135 (1st Cir. 1987).

"Under the practice of remittitur ... the court may also condition the denial of a motion for a new trial on the filing by plaintiff of a remittitur in a stated amount." *Phelan v. Local 305,* 973 F.2d 1050, 1064 (2d Cir.1992); *see also Catullo v. Metzner,* 834 F.2d 1075, 1082 (1st Cir.1987) ("Rule 59 empowers the trial court to order remittitur where a damage award is not supported by the weight of the evidence."). The court must, however, hold out the option of a new trial. *Phelan,* 973 F.2d at 1064 (collecting cases).

We will reverse a district court's decision to order a remittitur or a partial new trial due to an excessive damage award, only where the court abused its discretion. *Quinones–Pacheco v. American Airlines, Inc.,* 979 F.2d 1 (1st Cir.1992); *Catullo,* 834 F.2d at 1082. Here, we must analyze the district court's decision against the proper measure of damages under Puerto Rico law. The Supreme Court of Puerto Rico has held that,

> "the measure of damages sustained by reason of failure on the part of an employer to comply with a contract for services is, prima facie, the compensation stipulated in the contract, subject to reduction upon proof by the defendant as to the amount the employee did gain or could have gained during the time the contract remained in force."

*Villar & Co. v. Conde,* 30 F.2d 588, 590 (1st Cir.1929) (quoting *Hardouin v. Krajawsky–Pesant Co.,* 22 P.R.R. 641 (1923)). This standard was correctly identified by the district court. *Conjugal I,* 798 F.Supp. at 901.

Here the district court engaged in a detailed examination of the evidence pertaining to damages, and concluded that the jury's excessive generosity was traceable to two errors. First, the court determined that the jury, in computing plaintiff's damages, failed to deduct the fees generated during phase I of the Dupont trial, $112,083 (of which plaintiff received his share), from the total fees earned during the entire trial, $465,787.75. Therefore, the jury used $465,787.75 as a starting point instead of $353,704.25 (*i.e.,* $465,787.75–$112,083).

According to the district court, the jury's error was almost certainly attributable to counsels' "casual treatment of the evidence pertaining to damages." *Conjugal I,* 798 F.Supp. at 900. The figures show that the jury likely committed this oversight. If we take the higher figure, deduct $15,000 for expenses [5] and divide the difference ($450,787.75) by two, the quotient (*i.e.,* plaintiff's "prima facie" loss) comes out to approximately $225,000—the amount actually awarded by the jury.

The second defect in the damage award identified by the district court was the jury's apparent failure to reduce plaintiff's damages by the amount plaintiff earned after his discharge on June 30, 1989, and before the termination of the Dupont trial in December 1991. It was undisputed that plaintiff earned approximately $50,000 in 1990 and $40,000 in 1991 from court reporting sources. There was no direct testimony as to plaintiff's court reporting income for the balance of 1989. Because Puerto Rico law requires that a damage award be reduced by the amount of the plaintiff's gain during the remaining life of the contract, the jury's failure to do so here resulted in an excessive damage award.

After scanning the trial record, we agree with the district court that these deficiencies infected the jury's damage calculation and resulted in an excessive damage award.

5. This is the minimum amount of expenses, supported by the record, incurred by defendant after plaintiff's discharge.

Therefore, a new trial or a partial remittitur was warranted.

With respect to the remittitur, plaintiff argues that he was willing to remit a lesser amount, and that the court's remittitur was excessive. The rule in this circuit for computing a remittitur is the "least intrusive" standard. *See Catullo,* 834 F.2d at 1083; *see also Earl v. Bouchard Transp. Co.,* 917 F.2d 1320, 1328 (2d Cir.1990) (explaining three different rules for computing remittitur and adopting the least intrusive method). Under this standard, the remittitur amount should reduce the verdict "only to the maximum that would be upheld by the trial court as not excessive." *Earl,* 917 F.2d at 1330. The district court used this standard in calculating its remittitur. *Conjugal I,* 798 F.Supp. at 902–03. We can find nothing in the record to substantiate plaintiff's claim that the trial judge abused his discretion by remitting the amount that he did, $140,000.

As our discussion above indicates, *see supra,* p. 397, the maximum amount of plaintiff's prima facie loss supported by the evidence was $169,350 (*i.e.,* ($353,705–$15,000)/2). Under Puerto Rico law, this figure must be reduced by the minimum amount of mitigation proved by defendant at trial, approximately $90,000.[6] Consequently, we are left with a maximum damage award of approximately $80,000. Plaintiff's attack on the amount left in place by the district court, $85,000, is therefore without force.

### C. *Mitigation of Damages*

Plaintiff maintains that he is entitled to a third trial on damages because the district court improperly admitted, at both trials, evidence pertaining to the issue of mitigation of damages. According to plaintiff this constituted reversible error because the defendant never pleaded mitigation as an affirmative defense.

It is true that defendant did not plead mitigation of damages as an affirmative defense *in his complaint.* Nor does it appear that the issue was addressed in any pretrial orders prior to the first trial. Plaintiff did, however, include a proposed jury instruction concerning mitigation of damages in his proposed charge submitted in anticipation of the first trial.[7]

At the first trial, the issue of mitigation was initially raised during defense counsel's cross-examination of plaintiff, when he asked plaintiff about income from court reporting sources subsequent to being discharged. At no time during this line of questioning did plaintiff's counsel object on the grounds that the defendant had waived this defense by failing to plead it in accordance with Fed. R.Civ.P. 8(c). The sole objections raised by plaintiff's counsel were that the questions exceeded the scope of the direct examination, and that plaintiff's income was not pertinent to the case. At the end of the trial, the district court instructed the jury, without objection from plaintiff, on the doctrine of mitigation.

After the district court granted defendant's postjudgment motion, plaintiff moved for reconsideration based in part on defendant's failure to plead mitigation of damages as an affirmative defense. The district court denied the motion on the ground that, "mitigation was referred to repeatedly during trial and in the Court's instructions to the Jury

6. Because plaintiff was only able to estimate his annual earnings for 1990 and 1991, the district court discounted the figures provided by plaintiff. The court reasonably concluded from the evidence that plaintiff earned a total of $85,000 from court reporting between the time he was terminated until the end of the Dupont trial. *Conjugal I,* 798 F.Supp. at 903.

7. Plaintiff's proposed instruction number 25 states:

> The measure of damages sustained by reason of failure on the part of an employer to comply with a contract, subject to reduction upon proof by the defendant as to the amount the employee did gain or could have gained during the time the contract remained in force. *Hardouin v. Krajewski–Pesant Co.,* 22 P.R.R. 641.
>
> In an action for damages for breach of a contract for services it devolves upon the defendant to prove that the plaintiff secured or could have secured another position, and while the discharged employee is bound to look for other work or take the risk of having the amount claimed reduced by the amount which he could have earned, he is not required to look for work of a different nature, or in another locality, or in the service of an unsuitable employer. *Id.*

without any objection being interposed by plaintiffs. Plaintiffs' conduct during trial amounted in our opinion to a waiver of the ground they now assert."

Between the first and second trials, defendant engaged in extensive discovery on the issue of mitigation of damages. Questions concerning mitigation were posed by defendant in written interrogatories and at plaintiff's deposition. Both parties retained experts (certified public accountants) who authored reports on plaintiff's damages, and later testified at trial on the issue of mitigation. Additionally, both parties submitted trial memoranda in which, at the court's direction, the issue of mitigation was briefed. The parties also filed a joint trial memorandum in which plaintiff included, among his claims and defenses, the statement that "[p]laintiffs made every effort to mitigate the damages caused by the breach of contract by defendants, but were set back by the unilateral termination of the contract by defendants, which affected plaintiffs' good name and reputation in the industry."

Furthermore, in the opening statement plaintiff proposed that the judge give to the jury, he specifically asked the court to address the issue of mitigation:

> Once the amount due to plaintiffs is determined, then, you must consider[ ] whether or not plaintiffs had the duty to mitigate the damages suffered as a consequence of the breach of contract by defendants. Also, you must consider the steps taken by plaintiffs to mitigate these damages. Then, you must determine whether an amount for mitigation of damages, if any, is to be deducted from plaintiffs' award.

Finally, in a proposed jury charge submitted prior to the second trial, plaintiff devoted seven instructions exclusively to the issue of mitigation of damages. At no time during the activities leading up to the second trial did plaintiff argue that defendant had waived the defense of mitigation of damages by omitting it from his answer.

On the opening day of the second trial, defendant moved to amend his answer, pursuant to Fed.R.Civ.P. 15(b), to include mitigation of damages as an affirmative defense. Plaintiff objected. The court overruled plaintiff's objection and allowed the amendment:

> [O]n mitigation, the law of Puerto Rico and every other jurisdiction is so clear that prima facie damage for breach of contract places on the injured party the obligation to mitigate.
>
> But it is more than that. It is that part of plaintiffs' proof in a breach of contract case, as in every case, is causation, liability, and liability causing damage to the extent that an injured plaintiff can avoid that damage by working himself. To that extent his damage is not caused by the defendant, but is, rather, caused, if this is the evidence, by plaintiffs' failure to exert reasonable effort to make up for this loss of income.
>
> * * * * * *
>
> Now, basically it is the defendants' burden to prove mitigation. In the way this case stands the defendant will go forward and have the burden of proof. But to eliminate from the case the mitigation issue, and implicitly, the importance of the plaintiff establishing causation between liability and damage requires, in my view, the amendment of the pleading that the defendant has proposed.

*Transcript of Second Trial,* Vol. I, pp. 34–35. At the start of the third and final day of trial, after the issue of mitigation had been litigated, the court revisited its prior ruling:

> [T]he Court now vacates its allowance ... [of] defendant's motion to amend its answer by adding the affirmative defense of mitigation of damages. This order does not affect the evidence at this trial or the evidence that will go to the jury, but, rather, the state of the pleadings.

*Transcript of Second Trial,* Vol. III, p. 3. The court then explained that defendant was not required to plead mitigation of damages as an affirmative defense, and that the court had granted defendant's motion to amend because it did not think that the amendment had any real significance. The court added, however, that it realized that there was support for the position that mitigation was an affirmative defense. Therefore, the court

"un-amended" defendant's answer so that plaintiff could raise the present issue on appeal.

After the jury returned its $20,000 verdict, plaintiff moved to set aside the judgment based primarily on the trial court's admission of mitigation evidence. The court denied the motion:

> At the first trial plaintiffs offered evidence of damage to their reputation for having been "kicked out of Puerto Rico", which was relevant only to mitigation and did not object to instructions submitting the issue to the jury. The retrial on damages was preceded by abundant discovery as to mitigation, at the Court's direction the parties briefed the law applicable to this issue and both parties called alleged experts to testify about plaintiffs' actual and potential earnings. In our opinion any error in the Court's reception of evidence on mitigation could not have been prejudicial.

*Conjugal Partnership Comprised by Jones v. Conjugal Partnership Comprised by Pineda,* No. 90-1051 (D.Mass. Dec. 15, 1992) (order denying motion to set aside new judgment). We review plaintiff's claim of error against this backdrop.

There is some question as to whether or not we should look to state law in determining if failure to mitigate damages is an affirmative defense under Fed.R.Civ.P. 8(c),[8] *compare Sayre v. Musicland Group, Inc.,* 850 F.2d 350, 354 (8th Cir.1988) (whether mitigation is an affirmative defense under Rule 8(c) is a federal procedural matter and is governed by the federal rules), *with 999 v. C.I.T. Corp.,* 776 F.2d 866, 870 n. 2 (9th Cir.1985) (citing California law for the proposition that mitigation of damages is an affirmative defense under Rule 8(c)). We need not, however, dwell on this dilemma. Failure to mitigate is an affirmative defense as a matter of federal procedural law, *see Lennon v. U.S. Theatre Corp.,* 920 F.2d 996, 1000 (D.C.Cir.1990); *Modern Leasing v. Falcon Mfg. of California,* 888 F.2d 59, 62 (8th Cir. 1989), as well as Puerto Rico law, *see Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485 (1985), and therefore must be pleaded.

Generally speaking, failure to plead an affirmative defense results in a waiver of the defense and the exclusion of all evidence relevant to it. *See Federal Deposit Ins. Co. v. Ramirez-Rivera,* 869 F.2d 624, 626 (1st Cir.1989); *Depositors Trust Co. v. Slobusky,* 692 F.2d 205, 208 (1st Cir.1982). Nevertheless, it is settled that "[w]hen there is no prejudice and when fairness dictates, the strictures of [the raise or waive] rule may be relaxed." *Jakobsen v. Massachusetts Port Authority,* 520 F.2d 810, 813 (1st Cir. 1975). Under Fed.R.Civ.P. 15(b),[9] the trial court may and should liberally allow amendments to the pleadings if prejudice does not result. *Id.* Moreover, when an affirmative defense that has not been raised in the pleadings has actually been tried by implied consent of the parties, the court must treat the defense as if it had been raised in the original responsive pleading. *Id.; Depositors Trust Co.,* 692 F.2d at 208.

With respect to the first trial, it is clear that the issue of mitigation was actually tried with plaintiff's implied consent. "One sign of implied consent is that issues not raised by the pleadings are presented and argued without proper objection by op-

8. Under Rule 8(c), certain enumerated defenses, of which mitigation is not one, and "any other matter constituting an avoidance or an affirmative defense," must be pleaded by the defendant.

9. Rule 15(b) provides as follows:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time even after judgment; but failure to do so does not affect the result of the trial of these issues. If evidence is objected to at trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

posing counsel." *Matter of Prescott,* 805 F.2d 719, 725 (7th Cir.1986) (citing cases). Under Rule 15(b), lack of consent is manifested by an objection on the ground that the evidence is not within the issues raised by the pleadings. *Id.; Hardin v. Manitowoc-Forsythe Corp.,* 691 F.2d 449, 457 (10th Cir. 1982). Here, defendant's mitigation evidence was presented without relevant objection by plaintiff.

Furthermore, implied consent is generally found where the opposing party actually produced evidence on the new issue. *See Law v. Ernst & Young,* 956 F.2d 364, 375 (1st Cir.1992); *Lynch v. Dukakis,* 719 F.2d 504, 508 (1st Cir.1983); *Hardin,* 691 F.2d at 457; *see generally* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1493 at 28 (1990) (citing cases). Here, as the district court noted, plaintiff's testimony concerning alleged damage to his reputation within court reporting circles was relevant *only* to the issue of mitigation.[10] Moreover, plaintiff did not object to that portion of the jury charge concerning mitigation of damages. *See Zappia v. Baltimore & Ohio R.R. Co.,* 312 F.2d 62, 64 (6th Cir.1963) (implied consent found where party did not object to jury instruction on unpleaded issue). Finally, plaintiff never asked for a continuance in order to meet the evidence of mitigation, nor did he allege any prejudice resulting from the court's admission of the mitigation evidence at the first trial. *Rhode Island Educ. v. Secretary U.S. Dep't of Educ.,* 929 F.2d 844, 855 (1st Cir. 1991) (unpleaded issue properly raised where opposing party failed to argue prejudice); *George Cohen Sons & Co. v. Koch,* 376 F.2d 629, 632–33 (1st Cir.1967) (claim tried by implied consent of the parties where opposing party failed to seek a continuance to meet evidence on unpleaded issue). Moreover, in light of the fact that plaintiff, prior to trial, submitted a proposed jury instruction on the doctrine of mitigation, we can reasonably conclude that plaintiff anticipated that the issue would be litigated, and consequently was not prejudiced when it was raised.

Turning our attention to the second trial, we reach the same conclusion. We note, however, that the district court erred as a matter of law in holding that mitigation of damages is not an affirmative defense under Rule 8(c). Nevertheless, because we affirm the court's ruling that the issue of mitigation was properly litigated, its error was harmless.

It is hornbook law that, " 'at the trial stage the case is to be heard on the merits, and is not to be hamstrung by faulty pleadings, unless actual, not conjectural, prejudice results from the faulty pleadings.' " *Green v. United States,* 629 F.2d 581, 584 n. 1 (9th Cir.1980) (quoting 2A James W. Moore et al., *Moore's Federal Practice* ¶ 8.05 at 8–34 (2d ed. 1979)). Because the issue of mitigation was the subject of substantial pretrial activity, plaintiff had ample notice that the defense of mitigation would be litigated at the second trial. Consequently, the district court's decision to admit the mitigation evidence and allow the issue to be litigated was proper. *See Pane v. RCA Corp.,* 868 F.2d 631, 637 (3d Cir.1989) (where unpleaded affirmative defense was referred to repeatedly in pretrial motions and no unfair surprise resulted, district court did not abuse its discretion in allowing the issue to be litigated).

We have considered plaintiff's other claims—particularly those concerning the trial court's denial of his motion for sanctions under Fed.R.Civ.P. 11, the court's decision to stay the execution of judgment after the first trial, and its refusal to compel discovery of defendant's personal financial papers—and find them to be without merit.

The judgment of the district court is ***Affirmed.***

10. This testimony was relevant to the issue of mitigation because while a party is under a duty to mitigate damages, "only those who are able to mitigate must do so." *Noble v. Corporation Insular de Seguros,* 738 F.2d 51, 55 (1st Cir.1984). It was not otherwise relevant since only economic damages are recoverable in a breach of contract action in Puerto Rico. *See* P.R. Laws Ann. tit. 31, § 3023 (1990).