**Robert S. CAHILL, Frank M. Barbuto, Sr. and William J. Baldwin, Partners, d/b/a CBC Painting, Plaintiffs,**

v.

**TIG PREMIER INSURANCE COMPANY, Defendant/Plaintiff–in–Counterclaim/Third–Party Plaintiff,**

v.

**Isabel Cahill, Mary Alice Barbuto, Douglas E. Caffrey and Carol Caffrey, Third–Party Defendants.**

**No. Civ.A 96–40147 NMG.**

United States District Court, D. Massachusetts.

March 29, 1999.

88

Lawrence Delaney, Richard M. Freije, Mountain, Dearborn & Whiting, Worcester, MA, for plaintiffs.

Thomas H. Hayman, Bradford R. Carver, Cetrulo & Capone, Boston, MA, Bradford R. Carver, Cetrulo & Capone Lahey, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On June 29, 1998, after a six-day trial, the jury in this case rendered a verdict in favor of the plaintiffs against the defendant TIG Premier Insurance Company ("TIG") and awarded damages in the amount of $297,000. On September 17, 1998 this Court entered a judgment for the plaintiffs in the amount of $375,017.42 which represented the damages awarded plus prejudgment interest. Pending before this court are TIG's motions for remittitur and for an order precluding prejudgment interest (Docket No. 62) and for an order staying enforcement of the judgment (Docket No. 66).

## I. *Background*

The plaintiffs Robert S. Cahill, Frank M. Barbuto, Sr. and William J. Baldwin are partners in CBC Painting ("CBC"), a painting subcontractor that performs bonded and unbonded work. TIG issued performance and payment bonds on behalf of CBC for a construction project in Southbridge, Massachusetts. Lawlor Corporation was the general contractor for the project and the obligee under TIG's bonds.

A dispute arose between Lawlor and CBC the settlement of which resulted in this lawsuit between CBC and TIG. CBC alleged, and the jury found, that TIG orally promised CBC that if CBC accepted Lawlor's settlement offer, TIG would waive its right to seek indemnification from CBC. CBC then accepted Lawlor's offer but the jury found that TIG subsequently breached the oral contract by actively seeking reimbursement from CBC which, in turn, was thereby prevented from obtaining the bonds necessary to perform additional bonded work.[1]

---

1. Notwithstanding its finding of breach of contract, the jury found in favor of TIG on

## II. *Motion for Remittitur*

### A. *Legal Standard*

■ TIG moves this Court to order a remittitur offering CBC a choice of no damages or a new trial on damages. Fed. R.Civ.P. 59(a) provides that "[a] new trial may be granted ... on all or part of the issues...." Grounds for the granting of a new trial include a showing that a damage award is not supported by the weight of the evidence. *Conjugal Partnership v. Conjugal Partnership*, 22 F.3d 391, 397 (1st Cir.1994). Under the doctrine of remittitur, a court may condition the need for a new trial on the issue of damages on the prevailing party's acceptance of a reduced sum of damages. *Id.* at 397.

■ In reviewing an award of damages, this Court is obliged to review the evidence in the light most favorable to the prevailing party. *Eastern Mount. Platform Tennis, Inc. v. Sherwin–Williams Co., Inc.*, 40 F.3d 492, 502 (1st Cir.1994) *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 256 (1995). A jury's assessment of the appropriate damage award is afforded great deference. *Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 11 (1st Cir.1993). In cases involving economic losses, remittitur or a new trial on the issue of damages is to be granted only when the jury's award exceeds "any rational appraisal or estimate of the damages that could be based upon the evidence before it." *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir.1982) (quoting *Glazer v. Glazer*, 374 F.2d 390, 413 (5th Cir.) *cert. denied* 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967)). In such a case, the remittitur amount should reduce the verdict "only to the maximum that would be upheld by the court as not excessive." *Conjugal Partnership* 22 F.3d at 398 (quoting *Earl v. Bouchard Transp. Co. Inc.*, 917 F.2d 1320, 1330 (2nd Cir.1990)).

■ When, as in the instant case, a plaintiff claims lost profits damages, the evidence must establish the amount of lost profits "with sufficient certainty." *Augat, Inc. v. Aegis, Inc.*, 417 Mass. 484, 488, 631 N.E.2d 995 (1994). Lost profits damages cannot be recovered when they are "remote, speculative, hypothetical, and not within the realm of reasonable certainty," but they need not be "susceptible of calculation with mathematical exactness." *Id.* at 488 n. 4; 631 N.E.2d 995.

### B. *Analysis*

■ The plaintiff's damages expert, Jon Fudeman, testified at trial that, in his estimation, CBC suffered $594,000 in lost profits as a result of its inability to perform bonded work. The defendant's damages expert opined that CBC suffered no lost profits. The jury awarded CBC $297,000, exactly one-half of Fudeman's estimate.

TIG's motion for remittitur challenges Fudeman's qualifications as an expert witness as well as the methodology and assumptions he employed in calculating CBC's lost profits. TIG moved to strike Fudeman's testimony at its conclusion. The Court denied that motion but indicated that the question of admissibility was a close one, noting that some of Fudeman's testimony was speculative.

TIG's arguments in favor of remittitur raise issues which it also raised in front of the jury through cross examination of Fudeman. The fact that the jury decided to award exactly one-half of Fudeman's estimated damages is strong evidence that not only TIG but also the jury was somewhat skeptical about Fudeman's testimony. It is equally apparent, however, that the jury did not fully accept the testimony of TIG's expert that CBC suffered no lost profits. The issue of the soundness of Fudeman's methodology and analysis goes to the weight and credibility of his opin-

CBC's claim of intentional interference with CBC's advantageous business relationships and this Court found that TIG did not violate

the Massachusetts Consumer Protection Act, M.G.L. c. 93A.

ions, matters which are properly evaluated by a jury. *See Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1106 (1st Cir.1994). This Court is in no better position than the jury to assess the damages evidence and therefore declines to play Monday morning quarterback in that regard.

Moreover, this Court cannot say that the jury's award exceeded "any rational appraisal or estimate of the damages that could be based upon the evidence before it." *Kolb*, 694 F.2d at 871. CBC, through its expert witness Fudeman, presented evidence from which a rational juror could have concluded that it suffered lost profits of $297,000. The fact that the damages were not calculable with mathematical precision does not undermine the jury's finding.

Furthermore, this case does not present the usual factual situation justifying remittitur. In most cases where remittitur has been granted the jury made a clear and identifiable error in determining the amount of damages such that adjustment of the award was fairly mechanical and did not interfere with the jury's function. *See Kolb*, 694 F.2d 869 (remittitur appropriate where defects in jury's award were "readily identifiable and measured"); *Conjugal Partnership*, 22 F.3d at 397 (jury made two easily identifiable errors in calculating the damage award); *Barter v. Columbia Farms Distribution, Inc.*, 912 F.Supp. 16 (D.Mass.1996). The present case is clearly distinguishable.

### III. *Prejudgment Interest*

TIG contends that it was improper for the Court to award prejudgment interest in this case because Massachusetts law does not permit the recovery of such interest when a damage award is based upon lost profits that would have been incurred subsequent to the filing of the lawsuit.[2] CBC filed this suit on July 10, 1996. Fudeman testified that, due to the nature of the bonded market, TIG's breach resulted in lost profits that would have accrued to CBC between 1994 and 1999. The parties apparently agree that Massachusetts law prevents CBC from collecting interest on the portion of the jury award that is meant to compensate it for lost profits incurred after July 10, 1996.

The problem, however, lies in interpreting the jury award. There is no way to determine whether the jury intended to compensate CBC solely for damages sustained before July, 1996, or for the entire period from 1994 to 1999. If the jury intended the latter, there is no principled way to parse the verdict into pre–1996 and post–1996 amounts.

The parties disagree about who should bear the burden of the ambiguity. TIG argues that 1) CBC had the burden of proving the dates on which the various portions of its loss accrued and 2) CBC's failure to do so precludes its entitlement to any interest. CBC responds that TIG waived its right to contest the issue by not objecting to the verdict form or specifically requesting that the jury divide the award into its component parts.

Neither party has provided this Court with any case law that conclusively resolves the dispute. This Court therefore looks to the purpose of the relevant statute, M.G.L. c. 231, § 6C, to determine whether prejudgment interest is appropriate in this case.

■■■■ Prejudgment interest "is awarded to compensate a damaged party for the loss of use or unlawful detention of money." *Conway v. Electro Switch Corp.*, 402 Mass. 385, 390, 523 N.E.2d 255 (1988). Interest is therefore not added to damages which, by definition, are for losses to be incurred in the future. *Id.* Furthermore, the Supreme Judicial Court of Massachusetts has held that M.G.L. c. 231, § 6C should be interpreted to reflect the com-

---

**2.** M.G.L. c. 231, § 6C directs the clerk of court to calculate interest from the "date of the breach or demand," or if neither is established, from the date of the "commencement of the action."

mon law's concern that a "liberal award of prejudgment interest could result in a windfall for plaintiffs amounting, in essence, to an award of punitive damages." *Sterlite Corp. v. Continental Cas. Co.,* 397 Mass. 841 (1986).

 Awarding CBC prejudgment interest in this case carries with it the likelihood that CBC will obtain such a windfall. Fudeman's damages calculations projected lost profits through 1999. As such, it is likely that the jury's award was intended to compensate CBC for damages incurred both before and after July, 1996. Given the purpose of M.G.L. c. 231, § 6C and the admonishment to avoid windfalls, the ambiguity of the jury's verdict leads this Court to err on the side of caution and to conclude that prejudgment interest is inappropriate in this case. The judgment shall therefore be modified accordingly.

### ORDER

For the foregoing reasons, TIG's motion for remittitur and for an order precluding prejudgment interest (Docket No.62), is, with respect to remittitur, DENIED and, with respect to prejudgment interest, ALLOWED. The Judgment entered by this Court on September 17, 1998 is therefore reduced to $297,000, the amount awarded by the jury.

TIG's motion for an order staying enforcement of the judgement (Docket No.66) is DENIED.

So ordered.