**Robert DALL and Rodney Owen, Plaintiffs, Appellants,**

v.

**Roger COFFIN, et al., Defendants, Appellees.**

No. 91–1162.

United States Court of Appeals, First Circuit.

Heard Aug. 1, 1991.
Decided July 22, 1992.

Richard W. Elliott, II with whom Richard W. Elliott and Elliott & Elliott, Boothbay Harbor, Me., were on brief for appellants.

H. Peter Del Bianco with whom Philip M. Coffin, III and Black, Lambert, Coffin & Rudman, Portland, Me., were on brief for appellees.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and WOLF,* District Judge.

WOLF, District Judge.

Appellants in this case contend that they were deprived of their right to trial by an impartial jury. They assert that one of the jurors was biased, and that he failed to answer properly voir dire questions which would have revealed this bias. Further, they claim that the trial judge improperly refused to disqualify the juror and improperly ordered counsel not to investigate the matter further. Because we find appellants' contentions to be flawed factually and unmeritorious as a matter of law, we affirm.

## I

## FACTS

This case first went to trial on June 26, 1990. Plaintiffs Robert Dall and Rodney Owen alleged, among other things, that defendant police officers Roger Coffin, Donald Goulet, Lewis Labbe and James Swint conspired to use, and used, excessive force against them in violation of 42 U.S.C. § 1983. After one and one half days of testimony, a mistrial was declared because of plaintiffs' failure in the course of pretrial discovery to identify a medical care provider for Dall.

A second trial commenced with jury selection on Tuesday, November 13, 1990. During voir dire, the panel of potential jurors was asked, among other things: whether they had read anything about the case in the newspaper or heard about it on the television or radio; whether they knew any of the parties, counsel, or potential witnesses in the case; whether they or their spouses were formerly employed by law enforcement agencies; and whether there were any other reasons they could not be impartial and unbiased if selected as jurors. At the conclusion of his inquiry, the district judge asked whether plaintiffs' counsel wanted any additional questions put to the panel. Plaintiffs' counsel responded that he did not.

Testimony in the case began on Thursday, November 15 and continued the next day. On Monday morning, November 19, counsel for the plaintiffs advised the court that he had received information over the weekend indicating that one of the jurors, John Sczymecki, might be biased as a result of contact with a co-worker, Scott

---

* Of the District of Massachusetts, sitting by designation.

Walker. Walker was described as an ex-police officer who was a co-defendant in a companion case brought by plaintiff Dall in state court against the police defendants in this case and others. Counsel informed the court that a third individual, who taught at the same school as Sczymecki and Walker, could testify as to contact between them and their discussions regarding newspaper articles concerning the pending case.

After receiving this information, the district judge suspended the trial and promptly questioned several individuals under oath. He first addressed the jury foreperson, who testified that none of the jurors had discussed the case in his presence. The district judge then questioned Sczymecki. Sczymecki denied having heard any discussions about the case, having discussed the case himself, or having read about the case in the newspaper since being selected as a juror. He admitted knowing Walker as a fellow teacher and being aware of Walker's background as a former police officer. He testified that he had never discussed the case with Walker.

Plaintiffs' counsel then disclosed that the co-worker who had given the information regarding Walker and Sczymecki was Patricia Bernier, plaintiff Owen's aunt. Bernier was called to court and questioned. Her testimony generally was that cases against the police were often discussed in the teachers' lounge, and that Sczymecki and Walker were friends.

In addition, two specific incidents emerged from the questioning of Bernier. First, at some point before jury selection, she overheard a group conversation in which Sczymecki said that "they would get the suckers." She understood that the conversation related to the case, but was not certain. Further, assuming the remark related to the case, she could not say which side would be "gotten" or who would "get" them. Rather, she interpreted the remark as "just a general statement, whichever side they were talking about, somebody would get one or the other of them." Second, she stated that on Wednesday, November 14, 1990, or possibly Tuesday, November 13, Sczymecki asked her if the newspaper had reported on the case in which he was a juror. Bernier did not have the newspaper, and the discussion ended there.

After questioning Bernier, the district judge again questioned Sczymecki. Sczymecki stated that he recalled no discussions regarding the case occurring in the teachers' lounge. He also said that he had seen Walker a few times outside of school, but considered himself an associate of Walker's, and not a friend. He twice more responded that he had never discussed the case with Walker.

Following this testimony, plaintiffs' counsel moved to disqualify Sczymecki as a juror. Defense counsel objected. The court responded to the motion to disqualify as follows:

> Counsel, I have to say I disagree with you. This juror went through the voir dire, he has been down here on two occasions and I questioned him closely. He gives me every indication of a juror who is telling me the truth about all the things I am asking him. And against that I have a witness who is related to one of the parties in this case and who knows Mr. Sczymecki, and apparently thinks he might be bias [sic], for whatever reason, in a case such as this....
>
> The statement that you represented to me, prior to the witness Mrs. Bernier coming in, as being made about Mr. Sczymecki referring to this case, on her own testimony does not appear to be there. She said she didn't know what it was about, and if it was in reference to this case. She didn't know which side they were referring to, as to who would get who. And he says he recalls no conversation of any kind about the case.
>
> So I am going to deny the request to remove this juror and substitute an alternate.

Following denial of the motion to disqualify, counsel for plaintiffs notified the court that they wished to conduct an investigation into possible contacts between Walker and Sczymecki. The court, however, responded, "I will prohibit such contact until

after a jury verdict has been rendered in this case."

This issue of an investigation was raised by plaintiffs' counsel a second time on November 19, and resulted in the following colloquy:

> MR. ELLIOTT: We will be initiating an investigation immediately, as soon as this case is complete, about the relationship between Scott Walker and the juror, we will be instructing our investigation people not to contact the juror.
>
> THE COURT: I want no contact made with Mr. Walker until a verdict is returned in this case. There will be plenty of time for you to do that. I have determined there is nothing inappropriate with respect to this juror. I instruct you to delay any investigation in that matter. And in order to avoid creating any risk that a juror may be improperly influenced in the course of this investigation, it should not be carried on after of [sic] the verdict is back. I don't want any investigation going forward.

On November 20, the court directed a verdict for one defendant on all counts and for the remaining defendants on all but the two excessive force charges. The jury was instructed on the remaining claims. Plaintiffs' counsel then renewed their motion to disqualify Sczymecki, alleging that, in addition to the grounds presented the previous day, Sczymecki had "seemed totally uninterested and gazing around overhead and to the rear of the courtroom" during the court's instructions to the jury. The court responded:

> That may be your impression. Let me say I could not more vigorously disagree with you then I do. I have not seen evidence of that kind and I think your suggestion, however much in good faith it must be, is colored by self interest in getting him excused from the jury.
>
> I have already determined that there is no reason, on the evidentiary showing that has been made, to believe this juror is prejudiced in any way, or made up his

mind, or has in any way acted in violation of the instructions the court has given the jury throughout this proceeding. I am convinced of that and I find that, as a question of evidentiary fact, having heard the evidence and observed everything about him that you have observed.

> I deny the request.

On November 21, the jury returned a verdict in favor of the defendants on all remaining counts. The plaintiffs subsequently filed two post-trial motions. On November 29, 1990, citing only *United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir.1985), they moved for an order granting "access and contact to and with the jurors (principals and alternates) and one Scott Walker" and other teachers at Sczymecki's school. In the alternative, they asked for permission to contact just the alternate jurors and Walker, or just other teachers at the school. This motion was denied on January 9, 1991.

On December 4, 1990, the plaintiffs moved for a new trial based on the ground that Sczymecki was a biased juror. This motion was also denied.

At a sanctions hearing on January 25, 1991,[1] the motion for permission to investigate the relationship between Walker and Sczymecki was discussed and the court's ruling clarified. During a colloquy between the court and plaintiffs' counsel, the district judge explained clearly that the court's post-trial ruling was intended to prohibit contact with jurors, but not with non-jurors. In response to a suggestion that the plaintiffs' motion had been "to investigate not the juror himself but those that worked around him," the court stated as follows:

> Now just a minute Mr. Elliott, the motion says plaintiff respectfully moves this court for order [sic] granting plaintiff's counsel or their agents access and contact to and with the jurors, principals and alternates, and one Scott Walker now

---

1. The defendants moved for fees or sanctions based on the plaintiffs' motion for a new trial. The court denied that motion, although noting "a considerable distaste for the laxity with which the plaintiffs' counsel investigated and assessed the vitality of the predicate for the motion for new trial."

formerly of Brunswick, Maine. The only authority and jurisdiction the court would have to act on the motion [is] to the extent it sought to authorize post verdict contact with jurors, that is what the denial did, it did not prohibit any otherwise proper investigation that would be outside of the jurisdiction.

The court only has jurisdiction of contact with jurors.

At a later point in the colloquy, plaintiffs' counsel indicated that he had understood the court's oral rulings during trial did not prohibit post-verdict contact with non-jurors, but the written motion had been filed "to be prudent."

Despite the district judge's clarification of his intentions, there is no evidence in the record that plaintiffs' counsel contacted Walker or did any further investigation after January 25, 1991. In any event, no affidavit concerning Walker's possible testimony or other information relating to Sczymecki's purported bias was submitted to the district court. Nor was the district court presented with any evidence that appellants were prejudiced by Sczymecki's service on the jury. Rather, this appeal was pursued.

## II

### DISCUSSION

As indicated earlier, appellants seek a new trial based on several related alleged errors which, they say, deprived them of their right to an unbiased jury. More specifically, they assert that the trial of their claims was fundamentally flawed because: Sczymecki gave false answers to the voir dire questions concerning bias; the district court erred in subsequently failing to disqualify Sczymecki; and the district court erred in ordering that no investigation, including an interview of Walker, occur either before or after a verdict was returned. As set forth below, appellants' contentions rest on erroneous factual assumptions and are each without merit as a matter of law.

**2.** Appellees argue that the claim that Sczymecki did not properly respond to voir dire questions is being raised for the first time on appeal.

### A. The Voir Dire

In a civil case, a district judge may grant a new trial to prevent a "manifest miscarriage of justice." *Wagenmann v. Adams*, 829 F.2d 196, 200–01 (1st Cir. 1987); *see also* Fed.R.Civ.P. 59(a). Generally, "motions for a new trial are directed to the trial court's discretion and this remedy is sparingly used." *United States v. Rivera–Sola*, 713 F.2d 866, 874 (1st Cir. 1983); *see also Milone v. Moceri Family, Inc.*, 847 F.2d 35, 37 (1st Cir.1988); *Real v. Hogan*, 828 F.2d 58, 61 (1st Cir.1987). In reviewing the district court's denial of appellants' request for a new trial, we thus consider only whether the district court abused its discretion. *Milone*, 847 F.2d at 37; *Real*, 828 F.2d at 61; *Rivera–Sola*, 713 F.2d at 874.

A party seeking a new trial because of non-disclosure by a juror during voir dire must do more than raise a speculative allegation that the juror's possible bias may have influenced the outcome of the trial. Rather, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). Further, we have held that a party seeking a new trial based on nondisclosure by a juror must "demonstrate actual prejudice or bias." *United States v. Aponte–Suarez*, 905 F.2d 483, 492 (1st Cir.1990); *Rivera–Sola*, 713 F.2d at 874. This "burden of proof must be sustained not as a matter of speculation, but as a demonstrable reality." *United States v. Vargas*, 606 F.2d 341, 344 (1st Cir.1979), *quoting United States v. Whiting*, 538 F.2d 220, 223 (8th Cir.1976).

To the extent that appellants now contend that Sczymecki improperly failed to disclose during voir dire that he knew Walker, this claim is unfounded.[2] Jurors

However, the motion for new trial presented to the district court briefly mentioned Sczymecki's failure to disclose in voir dire any prior knowl-

cannot be faulted for failing to disclose information for which they were never asked. *Aponte–Suarez*, 905 F.2d at 492 ("Jurors cannot be faulted for failing to disclose their previous service since they were never asked during the course of voir dire to make such a disclosure."); *Rivera–Sola*, 713 F.2d at 874 (nondisclosure of prior involvement in a civil case not improper when the panel was asked only about criminal cases). In this case, plaintiffs' counsel evidently did not initially ask the court to inquire whether any prospective juror knew Walker or any other individual involved in the companion state litigation. Nor, when the court solicited possible follow-up questions, did plaintiffs' counsel request any, let alone suggest a question which should have elicited disclosure of Sczymecki's relationship with Walker. In retrospect, appellants may wish that their counsel had asked for inquiry concerning Walker, among others. There is, however, no fair basis for asserting that Sczymecki improperly failed to disclose that he knew Walker.

■ With regard to the questions that were asked in voir dire, the appellants have not shown that Sczymecki answered any question improperly or that he was subject to a challenge for cause. During the trial the district judge conducted a thorough investigation into Sczymecki's possible bias and determined that Sczymecki had no improper contact with Walker and was not biased in any way. Appellants have not produced any evidence of Sczymecki's purported bias other than the testimony of Mrs. Bernier, which the district court found to be unpersuasive. Accordingly, appellants have not shown that Sczymecki failed to answer candidly a material question. *McDonough*, 464 U.S. at 556, 104 S.Ct. at 850.

■ Moreover, even if Sczymecki's answers were not candid, the appellants have not shown that a proper response would have provided a basis for a successful challenge for cause, *id.*, or that they have

edge of the case, his relationship with Walker, or any bias in general. Thus, we address the

suffered "actual prejudice." *Aponte–Suarez*, 905 F.2d at 492; *Rivera–Sola*, 713 F.2d at 874. If Sczymecki's relationship with Walker had been disclosed during voir dire, we expect that the district judge would have asked him the questions eventually posed several days later. There is no evidence suggesting that the district judge would have reached a different decision regarding Sczymecki's impartiality during voir dire than he reached later following a careful, focused investigation. A district judge's decision during voir dire concerning impartiality commands substantial deference. *United States v. Angiulo*, 897 F.2d 1169, 1182 (1st Cir.1990); *United States v. McNeill*, 728 F.2d 5, 9 (1st Cir.1984). Thus, it has not been shown that what appellants would characterize as "correct" responses to the voir dire questions would have required or resulted in the disqualification of Sczymecki for cause.

### B. *The Inquiry During Trial*

Appellants contend that after his midtrial investigation the district judge erred in determining that Sczymecki qualified as an impartial juror and in ordering them not to conduct any further investigation until a verdict was returned. As we have said previously, however, where as here, "a colorable claim of jury misconduct surfaces, the district court has broad discretion to determine the type of investigation which must be mounted." *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir.1990).

■ In exercising that discretion, the district judge's "primary obligation is to fashion a responsible procedure for ascertaining whether misconduct actually occurred and if so, whether it was prejudicial." *Id.* In discharging this duty, the court should attempt to assure that jurors will not be subjected to undue impositions. *Id.* This is, in part, because an inquiry concerning possible juror misconduct can itself affect the attitude of a juror and the dynamics of a jury. Thus, the scope of any inquiry " 'should be limited to only what is

issue.

necessary to determine the facts with precision.'" *Id., quoting United States v. Ianniello,* 866 F.2d 540, 544 (2d Cir.1989).

■ Where the district judge has adopted an appropriate procedure to address an issue of juror bias or misconduct and has explained his findings with sufficient specificity to permit informed appellate review, his decision not to disqualify a juror should not be disturbed in the absence of a patent abuse of discretion. *Id.; Angiulo,* 897 F.2d at 1186 ("Because the trial court's determination regarding continued juror impartiality is a question of fact, this enhances the deference due its ultimate finding on the issue.").

■ In this case, the district judge fully satisfied these standards in investigating the implications of Bernier's information concerning Sczymecki and in explaining his reasons for finding Sczymecki continued to qualify as an impartial juror. Thus, we find the district judge acted within his discretion in reaching this conclusion.

More specifically, when the question concerning Sczymecki arose, the district judge promptly and thoroughly questioned him, Bernier, and the jury foreman under oath, addressing Sczymecki both before and after hearing from Bernier. That inquiry indicated that Bernier did not have any specific information indicating bias or misconduct by Sczymecki. Her testimony was generally vague and confused. Sczymecki denied any bias or misconduct, including discussing the case with Walker or anyone else, or reading about the case in the newspaper after becoming a juror. The inquiry of the jury foreman did not suggest any impropriety by Sczymecki. In view of the responses to his inquiry, the district judge was entitled to rely on Sczymecki's assurances of impartiality in deciding not to disqualify him. *Angiulo,* 897 F.2d at 1186 (district judge "properly could rely on [jurors'] assurances of impartiality, given in response to his questions.")

The district judge also properly explained his reasons for this decision. The district judge stated that Sczymecki gave "every indication" of telling the truth. He also noted that he was not persuaded to disqual-

ify Sczymecki based upon the testimony of Bernier because she was related to one of the plaintiffs and could provide only vague information, which was insufficient to overcome Sczymecki's specific, credible responses. Thus, the district judge properly made and explained a quintessential judgment concerning credibility, which deserves our deference.

■ The district judge also acted within his discretion in ordering plaintiffs' counsel not to conduct any further independent investigation, including questioning Walker, before a verdict was returned. *See Mashpee Tribe v. New Seabury Corporation,* 592 F.2d 575, 594 (1st Cir.1979). The district judge stated he was fully satisfied that there was "nothing inappropriate" about Sczymecki as a juror. He expressed, however, the legitimate concern that an investigation during trial by plaintiffs' counsel would create a risk that a juror might be improperly influenced. It would obviously have been improper for plaintiff's counsel to communicate directly with Sczymecki. The district judge was in a position to conclude reasonably that, given his satisfaction with Sczymecki's impartiality, it was not necessary or appropriate to incur the risk of an indirect communication during trial with Sczymecki, or another juror, by someone contacted in the investigation. *Id.* This exercise of discretion was particularly reasonable in view of the short length of the trial, the opportunity the appellants would have to interview Walker and others after trial, and the district judge's understandable interest in minimizing the possibility of a second mistrial provoked by plaintiffs' counsels' conduct. Accordingly, the court's order preventing until after trial further investigation of the relationship between Walker and Sczymecki was not an abuse of discretion.

### C. *The Post–Trial Proceedings*

■ The district judge also acted within his discretion in denying appellants' motion to contact the jurors, including Sczymecki, after trial. As we have said previously:

[T]his Circuit prohibits the post-verdict interview of jurors by counsel, litigants, or their agents except under the supervision of the district court, *and then only in such extraordinary situations as are deemed appropriate.* Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties.

*United States v. Kepreos,* 759 F.2d at 967 (emphasis added). *See also Clarkson Co. v. Shaheen,* 660 F.2d 506, 514 (2d Cir.1981); *O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1309–10 (5th Cir.1977). Appellants suggest no reason why this should be regarded as "an extraordinary situation" warranting post-trial access to jurors. Nor can we discern one. Thus, the court properly denied the appellants' request to interview Sczymecki and his fellow jurors.

 Appellants also suggest that the district judge ordered counsel not to contact Walker, among other non-jurors, following the verdict and assert that this was improper. However, the record indicates that plaintiffs' counsel may have been, at most, only temporarily confused with regard to whether the court was prohibiting such contact. Further, appellants have not shown that any such possible confusion prejudiced them.

When in the course of the trial plaintiffs' counsel expressed his intention to initiate an investigation into the relationship between Walker and Sczymecki, the district judge clearly stated that he wanted "no contact made with Mr. Walker *until a verdict is returned* in this case. There will be plenty of time for you to do that ... I instruct you to delay any investigation into this matter." It is undisputed that plaintiffs' counsel then understood that the judge was not prohibiting post-verdict contact with non-jurors.

Nevertheless, following trial, appellants filed on November 29, 1990 a motion, citing *Kepreos, supra,* and requesting leave to interview the jurors and Walker, or in the alternative to interview just Walker and the alternate jurors or just the teachers at Sczymecki's school. This motion was denied on January 9, 1991. If the court's ruling on this written motion genuinely caused appellants any misapprehension concerning their ability to interview Walker, it was dispelled no later than January 25, 1991, when the district judge carefully explained he did not intend to prohibit post-verdict interviews of Walker or any other non-juror.

The record does not reflect whether Walker was interviewed on behalf of appellants after January 25, 1991. The district judge, however, was never provided an affidavit or any information suggesting that Walker would contradict Sczymecki's testimony or otherwise furnish a basis for the district judge to conclude that Sczymecki had not been an impartial juror. Thus, even assuming, without deciding, that appellants believed before January 25, 1991 that post-verdict contact with Walker or other teachers at Sczymecki's school was prohibited, they have not shown that they were prejudiced by this misunderstanding. Therefore, any arguable error by the district court concerning the possibility of post-trial investigation was harmless as well as temporary. *See McDonough,* 464 U.S. at 554–55, 104 S.Ct. at 849–50 (applying harmless error rule to appellate review of claims of juror bias). At this point, appellants' claim that Sczymecki was biased and that they were prejudiced by his participation as a juror remains sheer speculation, which is insufficient to merit a new trial. *See McDonough,* 464 U.S. at 556, 104 S.Ct. at 850; *Aponte–Suarez,* 905 F.2d at 412; *Rivera–Sola,* 713 F.2d at 874; *Shaheen,* 660 F.2d at 514 (upholding denial of motion to investigate juror where motion was based on "pure speculation" regarding juror's bias).

## III

## CONCLUSION

In view of the foregoing, the appellants have not shown: (1) that Sczymecki failed to answer any voir dire question properly;

(2) that the district judge did not appropriately investigate their claims of juror misconduct and permissibly deem Sczymecki qualified as an impartial juror; (3) that the district judge improperly restricted their right to investigate; or (4) that they were prejudiced by any of the rulings at issue. Accordingly, we hereby AFFIRM.