Dr. Porfirio FRANCESCHI,
et al., Plaintiffs

v.

HOSPITAL GENERAL SAN CARLOS,
INC., et al., Defendants.

No. CIV. 00–2209PGJA.

United States District Court,
D. Puerto Rico.

July 16, 2004.

Raul Barrera–Morales, Raul Barrera Morales Law Office, San Juan, PR, Jesus M. Hernandez–Sanchez, Hernandez Sanchez Law Firm, San Juan, PR, for Plaintiffs.

Myrta E. Nieves–Blas, Luis R. Santos Law Office, Luis M. Polanco–Ortiz, Luis R. Santos, Santos & Baez, Mayaguez, PR, for Defendants.

### OPINION AND ORDER

ARENAS, Chief United States Magistrate Judge.

## I.  INTRODUCTION

Dr. Porfirio Franceschi (hereinafter "Dr. Franceschi") and his wife Ángela Castillo (hereinafter "Castillo") and the conjugal partnership formed by them brought this action for damages against the defendant, Hospital General San Carlos, Inc. (hereinafter "Hospital"). (Docket No. 1.) The Hospital is alleged to have breached the professional services contract entered into with Dr. Franceschi. After a two-day trial, the jury returned a verdict in favor of the plaintiffs and awarded a total of $352,792. (Docket No. 93.) This matter is now before the court on motion for judgment as a matter of law filed by the Hospital pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. (Docket No. 97.) In the alternative, the Hospital moves for a new trial under Federal Rule of Civil Procedure 59 and/or for remittitur. (Docket No. 96.) The plaintiffs filed an opposition to the Hospital's motions. (Docket No. 100.) After considering the arguments of the parties and for the reasons explained below, the Hospital's motion for judgment as a matter of law is DENIED. It's motion for a new trial is also DENIED. Nevertheless, finding that the amount awarded for mental and emotional damages is excessive, I conclude that remittitur is warranted.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The testimony presented at trial establishes that Dr. Franceschi, a radiologist,

retired from the United States Army after 25 years of service. (Trial Transcript at 4–6.) While in the Army, Dr. Franceschi was assigned to different areas as chief of the x-ray departments. (*Id.* at 5.) After retiring, he continued to work as a civilian in the same hospital he had worked at prior to retirement. (*Id.* at 6.) Sometime between July and September of 1993, Dr. Franceschi received a call from Dr. Emilio Rodríguez Méndez (hereinafter "Dr. Rodríguez"), a friend from medical school who also happened to be the director of the Hospital. (*Id.* at 7.) At that time, they discussed the possibility of Dr. Franceschi relocating to Puerto Rico to work at the Hospital's radiology department. (*Id.*)

Initially, Dr. Franceschi expressed that since he was used to receiving a salary, he needed to know how much he was going to get paid. (*Id.*) Dr. Rodríguez told Dr. Franceschi that although he could not offer a salary, he would propose a better arrangement. (*Id.*) Dr. Rodríguez indicated that he would guarantee $10,000 a month plus 35% tri-monthly of the net income collected by the Hospital from the services provided by the radiology department. (*Id.* at 7–8.) Dr. Franceschi in turn stated that he would consider the offer. (*Id.* at 8.) After receiving several calls from Dr. Rodríguez, Dr. Franceschi decided to accept the offer and come to Puerto Rico. (Tr. at 8.) Since his contract with the hospital in Texas was set to expire in November of that year, he would be able to come to Puerto Rico in December to get the details of the new contract. (*Id.*)

When asked about what he understood regarding the percentage to which he was entitled, Dr. Franceschi testified that he understood he was entitled to 35% of the remaining income collected by the Hospital after deducting operational expenses. (*Id.* at 8–9.) With that understanding, Dr.

Franceschi met with Hospital executives on December 2 or 3, 1993. (*Id.* at 10.) Present at the meeting were Dr. Rodríguez, the Hospital's administrator Marcos Reyes, the Hospital's attorney and Dora Areizaga (hereinafter "Areizaga"), the Hospital's manager in charge of finances. (*Id.*) They handed Dr. Franceschi the papers containing the contract which he reviewed and signed. (*Id.* at 10.) Dr. Franceschi testified that he found the terms to be reasonable and that he had no questions at that time. (*Id.* at 10–11.) According to Dr. Franceschi, the terms of the contract reflected his understanding of what Dr. Rodríguez had offered. (*Id.* at 12.) Nowhere in the contract was it stated that the Hospital would make adjustments to the computation of the income generated by the radiology department. (*Id.*)

The testimony presented at trial further establishes that when Dr. Franceschi received the first quarter's check, he was surprised and disappointed. (*Id.* at 12–13.) Because the amount received was not in accordance with what he had expected, Dr. Franceschi went to discuss his concern with Areizaga, the person in charge of finances. (*Id.* at 13.) Areizaga did some numbers in the presence of Dr. Franceschi arriving at a number that supposedly reflected the net income of the radiology department. (*Id.* at 13.) From that number she subtracted 55%. When Dr. Franceschi inquired about the 55% reduction, Areizaga indicated that such was a "contractual adjustment." (*Id.*) Dr. Franceschi then claimed that there was nothing in his agreement regarding "contractual adjustments" to which Areizaga replied that "that is the way it is practiced in Puerto Rico." (*Id.*)

Disagreeing with said position, Dr. Franceschi went to the Hospital's administrator who in turn indicated that the contractual adjustments were "costumbre y

uso" (custom and usage) in the Hospital industry. (*Id.*) Before that day, Dr. Franceschi had never been informed that the Hospital would be making those contract adjustments. He stated that had he known such was the case, he would not have entered into the contract. (*Id.*) But Dr. Franceschi continued working. (*Id.*) He decided that he would comply with the remainder of his term under the agreement and that he would not renew the contract with the Hospital which was set to expire in December of 1994. (*Id.* at 15.) Once the contract obligation concluded, Dr. Franceschi indicated to his wife that he believed the Hospital owed him money. (*Id.*) The present lawsuit ensued.

The case was called for jury trial on April 19, 2004. (Docket No. 85.) At the close of plaintiffs' presentation of the case, the Hospital moved for judgment as a matter of law which I denied with a ruling from the bench. (Tr. at 49.) The defendant then presented its case which included the testimonies of Hiram Irizarry and Marcos Reyes. At the close of all of the evidence, the Hospital failed to move for judgment as a matter of law. The jury returned a verdict in favor of plaintiffs and awarded $152,792 for the breach of the professional services contract and $100,000 to each plaintiff for mental and emotional anguish. (Docket No. 93.) The Hospital now moves for judgment as a matter of law or for a new trial and remittitur. I consider both motions in turn.

### III. DISCUSSION

#### A. *Motion for Judgment as a Matter of Law*

■ Motions for judgment as a matter of law are governed by Rule 50 of the Federal Rules of Civil Procedure. Specifically, Rule 50(a) allows a litigant in a trial by jury to move at any time before submission of the case to the jury, for the entry of judgment as a matter of law against a party who has been fully heard on an issue and if the court determines that there is no sufficient evidentiary basis for a reasonable jury to find for that party. Fed. R.Civ.P. 50(a). The court must "examine the evidence and all fair inferences in the light most favorable to the plaintiff [and] may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." *Katz v. City Metal Co.,* 87 F.3d 26, 28 (1st Cir.1996) (quoting *Richmond Steel, Inc. v. P.R. Am. Ins. Co.,* 954 F.2d 19, 22 (1st Cir.1992)). If from the evidence presented at trial, fair minded persons could draw different inferences, then the matter is for the jury to resolve and judgment as a matter of law is not appropriate. *Espada v. Lugo,* 312 F.3d 1, 2 (1st Cir.2002). But the non-moving party must have presented " 'more than a mere scintilla' of evidence" to survive a motion for judgment as a matter of law and cannot rely on "conjecture or speculation." *Katz v. City Metal Co.,* 87 F.3d at 28 (quoting *Richmond Steel, Inc. v. P.R. Am. Ins. Co.,* 954 F.2d at 22).

■ If a motion under Rule 50(a) is denied, the movant may renew his or her request for judgment as a matter of law by filing a motion no later than 10 after the entry of judgment. Fed.R.Civ.P. 50(b). However, a party is required to move for judgment as a matter of law at the close of all the evidence in order to preserve the right to renew his or her motion post trial. *Keisling v. SER–Jobs for Progress,* 19 F.3d 755, 758 (1st Cir.1994) ("If a defendant wishes to renew a motion for judgment as a matter of law at the post-trial stage, ... the defendant is required to have moved for judgment as a matter of law at the close of all the evidence."); *see also Flores–Suárez v. Turabo Med. Ctr. P'ship,* 165 F.Supp.2d 79, 84 (D.P.R.2001)

(holding that since the defendants failed to move for judgment as a matter of law at the close of all the evidence, their post trial motion for judgment as a matter of law was procedurally defective). The requirement that a motion be made at the close of all the evidence gives the opposing party an opportunity to address any evidentiary deficiencies exposed by the motion and to reopen the evidence if necessary prior to submission of the case to the jury. *Keisling v. SER–Jobs for Progress,* 19 F.3d at 759.

The Hospital argues that it is entitled to judgment as a matter of law "since the evidence and the controlling law does not support the verdict rendered by the jury...." (Docket No. 97, at 2, ¶ 2.) Specifically, the Hospital claims that the 35% overage to be paid to Dr. Franceschi was to be computed from the net income of the radiology department and for monies actually collected by the Hospital. The hospital also maintains that according to defendant's expert, Hiram Irizarry, the nationwide accounting rules for audit procedures in hospitals required that "contractual adjustments" be made to the billing system of each department. Therefore, based on said rules and Irizarry's report, the Hospital concludes that it only owes Franceschi $16,852 which it deposited with the Clerk of Court.

█ On the other hand, plaintiffs' opposition to the Hospital's motion for judgment as a matter of law raises the issue of procedural default. The plaintiffs argue that although the Hospital moved for judgment as a matter of law at the close of plaintiffs' case, it failed to renew or present said motion at the close of all the evidence. Consequently, it is plaintiffs' position that the Hospital has waived its right to have this court consider its Rule 50(b) motion. I agree.

As explained above, the presentation of a motion for judgment as a matter of law at the close of all the evidence is a procedural requirement that must be satisfied in order to bring a post-trial motion for judgment as a matter of law. *See Keisling v. SER–Jobs for Progress,* 19 F.3d at 758–59. From the record it clearly appears that the Hospital moved for judgment as a matter of law immediately after plaintiffs rested their case. (Tr. at 49.) However, it is similarly clear that the Hospital failed to renew the motion at the close of all the evidence. Such failure proves fatal to the Hospital's wishes that the court now considers the present motion for judgment as a matter of law. After all, "only very unusual circumstances will justify treating a motion at the close of the plaintiff's case as a surrogate for a motion at the close of all the evidence." *See Keisling v. SER–Jobs for Progress,* 19 F.3d at 759. I cannot discern any unusual circumstances that would excuse defendants' failure. Accordingly, the Hospital's motion under Rule 50(b) is DENIED.

In any event, it does not appear from the record that there is a dearth of evidentiary support for plaintiff's position that the so-called "contractual adjustments" constituted a breach of the contract between Dr. Franceschi and the Hospital. Review of a motion for judgment as a matter of law "is weighted toward preservation of the jury verdict, *which stands unless the evidence was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it.*" *Crowe v. Bolduc,* 334 F.3d 124, 134 (1st Cir.2003) (citing *Primus v. Galgano,* 329 F.3d 236, 241–42 (1st Cir. 2003)) (emphasis added). That is not the case here.

B. *Motion for a New Trial and Remittitur*

█ Pursuant to Rule 59 of the Federal Rule of Civil Procedure, the court may

order a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." Fed.R.Civ.P. 59(a)(1). Generally, the grounds under which a motion for a new trial may be granted include claims that

> the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

*Cigna Fire Underwriters Co. v. Mac-Donald & Johnson, Inc.,* 86 F.3d 1260, 1262–63 (1st Cir.1996) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)). A new trial is a remedy that is committed to the trial court's discretion and should be used sparingly. *Johnson v. Spencer Press of Me., Inc.,* 364 F.3d 368, 375 (1st Cir. 2004) (quoting *Dall v. Coffin,* 970 F.2d 964, 969 (1st Cir.1992)). It should be allowed only "if 'the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.'" *Johnson v. Spencer Press of Me., Inc.,* 364 F.3d at 375 (quoting *Ramos v. Davis & Geck, Inc.,* 167 F.3d 727, 731 (1st cir.1999)).

In general, the Hospital claims to be entitled to a new trial arguing that the verdict in the present case was tainted by undue passion, unfair prejudice or sympathy for the plaintiffs. Additionally, the Hospital contends that the verdict was against the clear weight of the evidence. Finally, the Hospital maintains that the damages awarded to the plaintiffs are grossly excessive and unconscionable. I address each contention seriatim.

### 1. *Undue Passion, Unfair Prejudice or Sympathy: Weight of the Evidence*

The Hospital argues that the verdict on the issue of liability and the huge size of the award of damages were the product of passion or sympathy for the plaintiffs and/or a misinterpretation of the evidence. As to the issue of liability, the Hospital argues that there was no evidence to establish breach of a contract signed by the parties and that contains clear terms. Further, it is the Hospital's position that the jury was not free to disregard the expert witness' testimony establishing the radiology department's net income and explaining the practice of contractual adjustments. Additionally, the Hospital maintains that "[t]he brief period of deliberation and the tell tale confusion o[f] the jury on the issue of compensation damages, prove that the jury's verdict is the product of prejudice against the Hospital" and of sympathy for the plaintiffs. (Docket No. 96, at 4, ¶2.) Finally, the Hospital contends that the verdict was contrary to the court's instructions. In essence, the Hospital argues that there will be a gross miscarriage of justice if the verdict in this case is allowed to stand.

The plaintiffs submit that based on the evidence presented at trial, including the professional services contract, the jury's determination that there had been a breach of contract is adequate, reasonable and supported by a legally sufficient evidentiary basis. According to the plaintiffs, the verdict is reasonable without the intervention of undue prejudice, passion or sympathy for the plaintiffs. A reasonable jury could have easily concluded, based on the evidence submitted, that the Hospital breached its obligations. As to the brief period of deliberation, the plaintiffs attribute the same to the fact that the presentation of the evidence in the case lasted just

one day with the examination of only four witnesses. Accordingly, a two-hour deliberation is not wholly unreasonable. Finally, the plaintiffs claim that the verdict is not contrary to the court's instructions, and that it is supported by the evidence inasmuch as from the testimony presented and the documentary proof submitted, the jury was reasonably justified in concluding that the application of contractual adjustments was neither agreed to nor included in nor contemplated by the agreement. Thus, the jury reasonably concluded that there had been a breach of contract.

At issue were the "contractual adjustments" that reduced the net income of the radiology department in turn reducing the amount of compensation to which Dr. Franceschi was entitled. The verdict is consonant with a finding by the jury that such contractual adjustments were neither agreed upon nor included in the contract. To determine the reasonableness of the jury verdict, the court must begin by examining the language of the contract at issue. In clause 10, the professional services agreement states as follows:

_____TENTH: The financial conditions of this contract shall be as follows:_____

_____1) "THE HOSPITAL" shall pay "THE RADIOLOGIST" a minimum guarantee of ten thousand dollars ($10,000.00) a month which shall be payable on the first of the following month._____

_____2) Every three months the total amount collected for the production and interpretation of the radiological studies charged by "THE HOSPITAL" shall be computed and of the amount in excess of the minimum guarantee, "THE RADIOLOGIST" shall be paid 35% of the net profit of the Department._____

(Professional Services Contract, Docket 97, Ex. II.) At trial, the interpretation of this particular clause was in controversy. The plaintiffs' position throughout this case has been that what constitutes the breach of contract is the 55% reduction as a "contractual adjustment" to the net income of the radiology department. Even a cursory reading of the clause cited above reveals a complete absence of any reference to said contractual adjustments. Plaintiffs complain that the contractual adjustment in turn reduced the net income of the radiology department, decreasing in turn the total amount from which Dr. Franceschi would collect the additional 35%.

The Hospital has asserted on the other hand that such contractual adjustments are a standard practice in the hospital industry. In support, they presented the testimony of Hiram Irizarry, C.P.A., as an expert in hospital accounting. The essence of his report and testimony is that hospitals have pre-established rates for the different departments and rooms. (Tr. at 64.) Those rates are charged to private patients. Irizarry explains the concept of *per diem* which is a contractual agreement between the hospital and the health insurance company by which the parties negotiate the amount that the latter is to pay the former for the different services offered to the beneficiaries. The amount is usually close to half of the rate a private person without insurance would pay. This is called, according to Irizarry, a contractual adjustment. As an illustration, Irizarry gives the example of a private individual who is provided a service for which the rate charged by the hospital is $900. An insurance company would negotiate to pay only $450 for the same service. Such contractual adjustment is what creates a difference between the net income of a particular department and the revenue actually collected by the hospital. (*Id.*) In the words of Irizarry, "the differ-

ence is an adjustment to the revenues of the hospital." (*Id.* at ll. 21–22.) Irizarry concludes based on the adjustment to the net income that as of today, Dr. Franceschi is only owed $16,857.

Furthermore, the Hospital asserts that the above cited clause is clear when it states that the "[e]very three months the *total amount collected* for the production and interpretation of the radiological studies charged by 'THE HOSPITAL' shall be computed and of the amount in excess of the minimum guarantee, 'THE RADIOLOGIST' shall be paid 35% of the net profit of the department." (Professional Services Contract, Docket 97, Ex. II, at 4.) (emphasis added). According to the Hospital, the contractual adjustments affected the net income of the radiology department to the point that there is a difference between the net income billed and the income actually collected. The Hospital maintains that Dr. Franceschi was only entitled to 35% of the net income collected after the contractual adjustments.

Article 1223 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3471, determines the manner in which a court should interpret contracts that are in dispute with respect to the meaning of its terms. *Borschow Hosp. & Medical Supplies, Inc. v. César Castillo, Inc.,* 96 F.3d 10, 15 (1st Cir.1996) (quoting *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith,* 839 F.Supp. 98, 104 (D.P.R.1993)). Article 1223 provides as follows:

If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.

31 P.R. Laws Ann. § 3471. Furthermore, "an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....'" *Borschow Hosp. & Medical Supplies, Inc. v. César Castillo, Inc.,* 96 F.3d at 15 (quoting *Executive Leasing Corp. v. Banco Popular De Puerto Rico,* 48 F.3d 66, 69 (1st Cir. 1987)). To be clear the contract has to be "sufficiently lucid to be understood to have one particular meaning...." *Hopgood v. Merrill Lynch, Pierce, Fenner & Smith,* 839 F.Supp. at 104.

With this principle in mind, I find that the contract clause containing the terms of the compensation to be paid to Dr. Franceschi is clear, and as such, the jury was entitled to conclude, as it did, that its literal sense had to be observed inasmuch as nowhere in the contract is there an indication that the net income be would reduced by the so-called contractual adjustments.[1] The testimony of Dr. Franceschi revealed that his expectation was to receive 35% of the net income of the radiology department unaffected by any reductions. Additionally, the agreement does not provide any indication that the computation of Dr. Franceschi's compensation would be the subject of "custom-and-

---

1. The court understands the Hospital's argument which is based on the maxim *nemo dat qui non habet* (He who hath not cannot give), that Dr. Franceschi cannot claim a 35% of any amount not actually collected. The problem with the Hospital's position is that the contract is clear and the concept of contractual adjustments is nowhere to be found in the agreement. Even if the court were to find ambiguity in the clause, the same would be interpreted against the drafter, in this case the Hospital. *See, e.g., Redondo Constr. Corp. v. Banco Exterior de España, S.A.,* 11 F.3d 3, 6 (1st Cir.1993) (stating that "ambiguities are construed against the drafter"). Additionally, the Hospital did not present sufficient detailed evidence for the jury to determine which portion of the income was collected *vis a vis* billed. Even the 55% reduction is unexplained.

usage" deductions even if they are a standard practice of the hospital industry. The Hospital does not clearly justify the 55% reduction. In view of the above, the jury's determination that there has been a breach of contract can hardly be said to be against the clear weight of the evidence or to be unreasonable. "[E]ven if the trial court could have reached a verdict opposite from the jury, the court shall not upset a jury verdict which is reasonably based on the evidence presented at trial." *Raybourn v. San Juan Marriott Resort & Stellaris Casino,* 259 F.Supp.2d 110, 112 (D.P.R.2003) (citing *Velázquez v. Figueroa–Gómez,* 996 F.2d 425, 428 (1st Cir. 1993)).

■ Furthermore, the argument raised by the Hospital that the verdict was the product of undue prejudice, passion and/or sympathy for the plaintiffs lacks merit. Nowhere in the record is there an indication that the jury was unfairly predisposed to find against the Hospital. In that sense, the Hospital's contention is nothing but conjecture and surmise. Even the brevity of the deliberations respond only to the fact that the presentation of evidence in this trial lasted one day with testimony of four witnesses. There is nothing unusual about a two hour deliberation following such a short trial. Additionally, passion and prejudice cannot be measured by the time a jury takes to arrive at its verdict. *deMars v. Equitable Life Assurance Soc'y,* 610 F.2d 55, 65 (1st Cir. 1979). I find that the Hospital has failed to demonstrate that if allowed to stand, the verdict would constitute a gross miscarriage of justice. As to this issue, the Hospital's motion for a new trial is DENIED.

### 2. Remittitur

Next is the Hospital's contention that the amounts awarded are excessive, requiring remittitur. The Hospital argues that the damages awarded for breach of contract ($152,792) as well as the damages awarded to each plaintiff for mental and emotional anguish ($200,000) are exaggerated, contrary to law and unsupported by the evidence. It also claims once again that the award was the product of prejudice, passion and /or sympathy for the plaintiffs. As to the award for breach of contract, the Hospital maintains that there is no mathematical logic for such compensation. As to the award for emotional damages, the Hospital contends that there was no evidence of any actual mental or emotional damage suffered by any of the plaintiffs.

The plaintiffs respond that even applying the different figures presented at trial regarding the unadjusted net income of the radiology department, the sum to which Dr. Franceschi would have been entitled (computing the 35%) is greater than what the jury awarded. In that sense, reduction is not warranted according to the plaintiffs. As to the emotional damages, the plaintiffs present no argument whatsoever to support the award in this case. They merely state that analyzing plaintiffs' testimonies in relation to the award of damages, specially that of Castillo, it must be concluded that the damages for mental anguish are reasonable and adequate. (Docket No. 100, at 18.)

■ A review of a damages award must focus on the evidence presented at trial and the court should not overturn a jury award that has substantial basis in the evidence. *See Havinga v. Crowley Towing & Transp. Co.,* 24 F.3d 1480, 1488 (1st Cir.1994). In addition, a jury award should not be disturbed only because "it is extremely generous or because ... [the court] think[s] [that] the damages are considerably less...." *Diefenbach v. Sheridan Transp.,* 229 F.3d 27, 32 (1st Cir.2000)

(quoting *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 34 (1st Cir.1999)). In other words, an award of damages would only be set aside "if it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." *Id.* Thus it has been held that a defendant challenging an award of damages bears a heavy burden of showing that the award is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." *Koster v. Trans World Airlines, Inc.*, 181 F.3d at 34 (quoting *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d at 1484). The rule in this circuit is that a jury award must be reduced "to the maximum that would be upheld by the trial court as not excessive." *Rosario Ortega v. Star–Kist Foods, Inc.*, 370 F.3d 124, 130 (1st Cir.2004) (quoting *Jones & Jones v. Pineda & Pineda*, 22 F.3d 391, 398 (1st Cir.1994)). The plaintiffs then have a choice of accepting the remitted award or opting for a new trial. *Ortega v. Star–Kist Foods, Inc.*, 370 F.3d at 130 (citing *Liberty Mut. Ins. Co. v. Cont'l Cas. Co.*, 771 F.2d 579, 588 (1st Cir.1985)).

■ With respect to the award for breach of contract, I find that the same should remain undisturbed. The jury was presented with contrasting figures regarding the radiology department's net income. Having found that the Hospital breached the contract by reducing the net income with contractual adjustments, the jury was entitled to compute plaintiffs' compensatory damages considering the net income unaffected by any reduction. The award of $152,792 is lower than what Dr. Franceschi would have received had he been paid the 35% of $645,098 which is the net income after subtracting operational expenses to the gross revenue ($1,151,172–$506,074). (*See* Tr. at 82.) The 35% of

$645,098 is roughly $225,784 minus $30,712 already paid to him, the compensation to which Dr. Franceschi would have been presumably entitled is $195,072. In that respect, the jury award of $152,792 is obviously lower, not inordinate nor shocking to the court's conscience. "In cases involving economic losses, remittitur or a new trial on the issue of damages is to be granted only when the jury's award exceeds 'any rational appraisal or estimate of the damages that could be based upon the evidence before it.'" *Cahill v. TIG Premier Ins. Co.*, 47 F.Supp.2d 87, 89 (D.Mass.1999) (quoting *Kolb v. Goldring, Inc.*, 694 F.2d 869, 871 (1st Cir.1982)). The Hospital's motion for remittitur anent the award of damages for breach of contract is DENIED.

The award for emotional and mental anguish fairs differently. The evidence presented at trial regarding the mental anguish suffered by both plaintiffs is scanty at best. Dr. Franceschi testified that he was upset and felt cheated; that he did not expect to sign a contract and that the Hospital would "come out with something that is not written in the contract[ ]." (Tr. at 19.) Castillo, on the other hand, testified that the situation has affected her in more than one way. (Tr. at 42.) She stated that in ten years, the situation has caused her "a lot [sic] of tears and a lot [sic] of time." (*Id.*) Also, that seeing her husband upset affects her because she loves him and whatever bothers him, affects her as well. (Tr. at 43.) Additionally, Castillo explained that every time they talk about the case they "end up like almost in a fight." (*Id.*) They end up mad at each other, going to separate rooms in the house until he later apologizes. (*Id.*) The situation has been going on, according to Castillo, for ten years. (*Id.*)

■ The above is the extent of plaintiffs' evidence regarding mental anguish.

The jury awarded $100,000 to each of the plaintiffs based on this evidence. Such result lacks substantial basis in the evidence. I am mindful that "[t]ransmitting legal damages into money damages is a matter 'peculiarly within a jury's ken,' especially in cases involving intangible, non-economic losses." *Torres v. KMart Corp.*, 233 F.Supp.2d 273, 282 (D.P.R.2002) (quoting *Smith v. Kmart Corp.*, 177 F.3d 19, 30 (1st Cir.1999)). However, the ultimate issue is whether there is evidentiary support for an award. I find that there is none for the award of $100,000 each in emotional damages. There must be a basis of substance for such an award and on this record, such an award cannot reasonably be sustained. Generously, the plaintiffs are entitled to $5,000 each. The award is therefore reduced accordingly and the Hospital's motion for a new trial on the issue of damages is GRANTED conditioned on plaintiffs' accepting the remitted amount.

## IV. CONCLUSION

In view of the above, the Hospital's motion for judgment as a matter of law is DENIED. The motion for new trial on the issue of liability is similarly DENIED. As to the motion for remittitur, the same is GRANTED in part and DENIED in part. It is DENIED with respect to the damages for breach of contract. It is GRANTED with respect to emotional damages. Should plaintiffs decline to accept $5,000 each for their emotional damages, a new trial shall be conducted limited to the issue of emotional damages.

SO ORDERED.